UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**SUHAIL ALI, SHALAN ALMANSOOB,**
**QASEM SALEH, and KASSEM DUBAISHI,**
on behalf of themselves and all other
persons similarly situated, known and
unknown,

      Plaintiffs,

                                        Case No:
vs.                                      Hon.

**PIRON, LLC, STEVE HANNAH,**
**CRAIG MONROE,**
**REYNOLDS QUALITY INSTALLATIONS, LLC,**
**RODERICK REYNOLDS JR.,**
**AERO COMMUNICATIONS, INC, and**
**COMCAST CABLE COMMUNICATIONS**
**MANAGEMENT, LLC,**
a Michigan for-profit company, and owners
of said Michigan for-profit company

      Defendants.
_____/

Bryan Yaldou (P70600)
Omar Badr (P70966)
THE LAW OFFICES OF
BRYAN YALDOU, PLLC
23000 Telegraph, Suite 5
Brownstown, MI 48134
Phone: (734) 692-9200
Fax: (734) 692-9201
bryan@yaldoulaw.com

*Attorneys for Plaintiffs*
_____/

**PLAINTIFFS' COMPLAINT AND JURY DEMAND**

NOW COME Plaintiffs Suhail Ali ("Plaintiff Ali"), Shalan Almansoob ("Plaintiff Almansoob"), Qasem Saleh ("Plaintiff Saleh"), and Kassem Dubaishi ("Plaintiff Dubaishi"), by and through their attorneys, THE LAW OFFICES OF BRYAN YALDOU, PLLC, and for their Complaint against Piron, LLC ("Defendant Piron"), Steve Hannah ("Defendant Hannah"), Craig Monroe ("Defendant Monroe"), Reynolds Quality Installations, LLC, ("Defendant Reynolds Quality"), Roderick Reynolds Jr. ("Defendant Reynolds"), Aero Communications ("Defendant Aero Communications"), and Comcast Cable Communications Management, LLC, ("Defendant Comcast"), hereby allege the following:

## INTRODUCTORY STATEMENT

1.      This is a civil action seeking relief under the provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* Plaintiffs are former misclassified employees of joint employers Defendant Piron, Defendant Reynolds Quality, Defendant Aero Communications, and Defendant Comcast whose rights under these statutes have been violated. Plaintiffs now seek to recover the benefits due to them from Defendants under the FLSA as a result of Defendants' failure to pay minimum wages and the overtime wage premium to Plaintiffs and other similarly situated misclassified employees.

2.      Plaintiffs seek a declaration that their rights under the FLSA have been violated; an award of the unpaid wages owed to them; an award of liquidated damages in an amount equal to the unpaid wages owed to them; and an award of reasonable attorneys' fees and costs as provided for in the FLSA, in order to compensate them for damages suffered and to ensure that they and future employees will not suffer as a result of such illegal conduct on the part of Defendants in the future.

**JURISDICTION AND VENUE**

3.      Plaintiffs hereby repeat and reallege the preceding paragraphs as though fully set forth herein.

4.      This Court has federal question jurisdiction over Plaintiffs' FLSA claims pursuant to 29 U.S.C. §216(b) and 28 U.S.C. § 1331.

5.      Venue is proper in this District, pursuant to 28 U.S.C. § 1391(a) and 1391(b), because Defendants reside in this District, Plaintiffs worked for Defendants in this District, and suffered the damages at issue in this District, Defendants have significant business contacts within this District, and because the actions and events giving rise to Plaintiffs' claims occurred in this District.

**PARTIES**

6.      Plaintiffs hereby repeat and reallege the preceding paragraphs as though fully set forth herein.

7.      Plaintiffs Suhail Ali, Shalan Almansoob, Qasem Saleh, and Kassem Dubaishi, are adult citizens of the State of Michigan, who reside in this judicial district. They worked as cable technicians for Defendants' for-profit businesses.

8.      Defendant Piron is a for-profit Michigan company with its Registered Office Address at 336 W. 1st St., Ste. 113, Flint, MI 48502.

9.      Defendant Reynolds Quality is a for-profit Michigan company with its Registered Office Address at 5915 Marseilles, Detroit, MI 48224.

10.      Defendant Aero Communications is a for-profit company with its Registered Office Address at 601 Abbot Road, East Lansing, MI  48823.

11.     Upon information and belief, Defendant Aero Communications has sufficient assets to cover any adverse judgment entered against it in this matter.

12.     Defendant Comcast is a for-profit company with its Registered Office Address at 40600 Ann Arbor Rd. E., Ste. 201, Plymouth, MI 48170.

13.     Upon information and belief, Defendant Comcast has sufficient assets to cover any adverse judgment entered against it in this matter.

## NATURE OF THE SUIT

14.     Comcast Corporation, Defendant Comcast, is a global media and technology company with two primary businesses, Comcast Cable and NBC Universal. Defendant Comcast is one of the nation's largest video, high-speed internet and phone providers to residential customers under the XFINITY brand and also provides these services to businesses.[1] In order to expand and service its customer base, Defendant Comcast has engaged subcontracting companies to provide these services in addition to having in house employees who install and repair its cable systems. Plaintiffs worked for these subcontracting companies as cable technicians in this structure to provide cable services to Defendant Comcast's customers.

15.     Defendant Comcast disclaims any legal relationship with these workers, although Defendant Comcast requires these cable technicians to wear a Comcast Provider badge; use Comcast technology including TechNet, a mobile routing application; perform their work according to Comcast's exact policies and procedures; and exclusively provide work for Comcast. Defendant Comcast labels these workers as "independent contractors" or alternatively, as employees of subordinate entities (including the named Defendants).

---

[1] Comcast Company Overview, http://corporate.comcast.com/news-information/company-overview (last visited November 2, 2016).

4

16.     Fortunately for these workers, it is the economic reality of the relationship under the FLSA — not the title given by the Defendants — that controls whether a cable technician meets the definition of an "employee" under the FLSA. *Donovan v. Brandel*, 736 F.2d 1114 (6th Cir. Mich. 1984) (citing *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139 (6th Cir. 1977). In applying this economic reality test, the Sixth Circuit has identified six factors to consider: 1) the permanency of the relationship between the parties; 2) the degree of skill required for the rendering of the services; 3) the worker's investment in equipment or materials for the task; 4) the worker's opportunity for profit or loss, depending upon his skill; 5) the degree of the alleged employer's right to control the manner in which the work is performed; and 6) whether the service rendered is an integral part of the alleged employer's business. *Id.* Moreover, the FLSA defines "employ" as including "to suffer or permit to work" and "employee" as "any individual employed by an employer." 29 U. S. C. §§ 203(g), (e). This is one of the broadest definitions that has ever been included in any legislation in United States of America's history. *See Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947); *United States v. Rosenwasser*, 323 U.S. 360, 362-363 and n. 3 (1945) (quoting Senator Hugo Black as stating that the term "employee" had been given "the broadest definition that has ever been included in any one act," 81 Cong. Rec. 7657 (1935)). The Defendants are Plaintiffs' employers under broad definition set by the FLSA because under the economic realities test, the Plaintiffs are economically dependent upon them.

17.     The U.S. Department of Labor (DOL) is aware of the problem of misclassification of workers as independent contractors and addressed the issue in its Administrator's Interpretation 2015-1 (DOL AI 15-1) (Exhibit A). DOL AI 15-1 states that the misclassification of employees as independent contractors is found in an increasing number of workplaces in the United States, in part reflecting larger restructuring of business organizations. *Id.* When employers improperly

classify employees as independent contractors, the employees may not receive important workplace protections such as the minimum wage, overtime compensation, unemployment insurance, and workers' compensation. *Id.* Misclassification also results in lower tax revenues for government and an uneven playing field for employers who properly classify their workers. *Id.* Some employees may be intentionally misclassified as a means to cut costs and avoid compliance with labor laws. *Id.*

18.     This Sixth Circuit is very familiar with the issue of the misclassification of workers in the telecommunications industry. In *Keller v. Miri Microsystems LLC,* 781 F.3d 799 (6th Cir. 2015), the Sixth Circuit Court of Appeals found that on practically the same facts, there was a genuine issue of fact whether satellite television installation technicians were employees under the FLSA and remanded the case back to the district court. Other Sixth Circuit cases with similar facts which deal with the issue of misclassification of television installation technicians include: *Benion v. LeCom, Inc.*, No. 15-14367, 2016 U.S. Dist. LEXIS 63210, 2016 WL 2801562 (E.D. Mich. May 13, 2016) (Exhibit J); *Dowd v. DirecTV, LLC,* 14-14018, 2016 U.S. Dist. LEXIS 36, 2016 WL 28866 (E.D. Mich. Jan. 4, 2016) (Exhibit N); *Swinney v. AMcomm Telecomms., Inc.*, 30 F. Supp. 3d 629 (E.D. Mich. 2014); *Lee v. Gab Telecom, Inc.*, No. 12-14104, 2013 U.S. Dist. LEXIS 54494, 2013 WL 1632552 (E.D. Mich. Apr. 16, 2013) (Exhibit P); *Comer v. DIRECTV, LLC,* No. 14-1986, 2016 U.S. Dist. LEXIS 27842, 2016 WL 853027 (S.D. Ohio Mar. 4, 2016) (Exhibit M); *Keeton v. Time Warner Cable, Inc.*, 09-1085, 2011 U.S. Dist. LEXIS 71472, 2011 WL 2618926 (S.D. Ohio July 1, 2011) (Exhibit O)  In all of these cases, the result was a determination that either the technicians were employees, or at least that there was a genuine issue of fact as to whether technicians were employees .

19.     In addition to addressing the issue of the misclassification of employees, Plaintiffs' complaint is a part of a movement challenging the fissured workplace scheme that is stripping American workers of their rights under the FLSA. (Exhibit C). In recent years, the employment relationship between workers and businesses receiving the benefit of their labor has fissured apart as companies have contracted out or otherwise shed activities to be performed by other businesses. *Id*. Often those secondary companies deepen the fissures, breaking those activities apart and shifting work even further out from the primary business. *Id.* The blurred lines from the fissured workplace make achieving compliance with the wage and hour laws a difficult task. *Id.* Intense competition between business models like subcontracting companies leads to low pay, and noncompliance pulls down standards for all – making it difficult for responsible employers to survive in low margin, fiercely competitive conditions. *Id.* The costs in this race to be the lowest bidder are borne by workers deprived of their wages and their rights. *Id.*

20.     In response to the problems caused by the fissured workplace, the DOL issued its Administrator's Interpretation 2016-1 on January 20, 2016, titled, Joint employment under the Fair Labor Standards Act and Migrant and Seasonal Agricultural Worker Protection Act. (Exhibit B). The DOL AI 16-1 broadens the common law understanding of joint employment to hold the large companies who are using the fissured workplace scheme to avoid compliance with the FLSA responsible. In DOL AI 16-1, the DOL described, "The **vertical joint employment** inquiry focuses on whether the employee of the intermediary employer is also employed by another employer – the potential joint employer. In vertical joint employment situations, the other employer typically has contracted or arranged with the intermediary employer to provide it with labor and/or perform for it some employer functions, such as hiring and payroll. There is typically an established or admitted employment relationship between the employee and the intermediary

employer. That employee's work, however, is typically also for the benefit of the other employer."

*Id.* (emphasis added). The DOL is working to ensure workers' rights under the FLSA by making

companies responsible for their subcontractors' workers when those workers are economically

dependent on those companies. The DOL brought a case last year alleging that DirectTV, a satellite

television provider, was in violation of the FLSA by using the fissured workplace scheme and

misclassifying employees as independent contractors. *Perez v. Lantern Light Corp.*, 2015 WL

3451268, at *17 (W.D. Wash. May 29, 2015) (Exhibit Q). The Court found that the satellite

television provider was a joint employer of the installers employed by the company with whom

the provider contracted to install its services. *Id. See also,* DOL AI-16 fn2.

21.     However, the question of whether two or more entities can be joint employers is

not a new issue. While the FLSA does not expressly reference "joint employment," the Department

of Labor's first set of regulations implementing the statute – which remains in force – recognizes

that, "[a] single individual may stand in the relation of an employee to two or more employers at

the same time under the Fair Labor Standards Act or 1938, since there is nothing in the act which

prevents an individual employed by one employer from also entering into an employment

relationship with a different employer." 29 C.F.R. § 791.2(a).

22.     Additionally, the Supreme Court has long recognized that two or more entities may

constitute joint employers for purposes of the FLSA. *Rutherford Food Corp. v. McComb*, 331 U.S.

722, 724-25 (1947); *Falk v. Brennan*, 414 U.S. 190 (1973).

23.     Plaintiffs joined herein similarly intend to prove in this litigation that they are

legally employed by Defendants and are entitled to the overtime and minimum wage protections

of the FLSA.

## STATEMENT OF MATERIAL FACTS

24.     Plaintiffs hereby repeat and reallege the preceding paragraphs as though fully set forth herein.

25.     Defendant Piron is a subcontracting company that contracts with Defendant Aero Communications to provide cable technician services.

26.     Defendant Piron is owned and operated by Steve Hannah.

27.     Defendant Reynolds Quality is a subcontracting company that provides cable technician services to Defendant Piron.

28.     Defendant Reynolds Quality is owned and operated by Roderick Reynolds Jr.

29.     Upon information and belief, Plaintiffs worked both directly and indirectly for Defendant Piron and Defendant Reynolds Quality. Plaintiffs filled out Defendant Piron's application for employment and were paid by both Defendant Piron and Reynolds Quality.

30.     Defendant Aero Communications contracts with Defendant Comcast to perform telecommunication installations and repair services for Defendant Comcast's customers in Michigan.

31.     Defendant Aero Communication acts as a General Contractor and contracts with subcontracting companies like Defendant Piron and Defendant Reynolds Quality to supply Defendant Comcast with workers. Those workers have the job responsibility of installing cable and repairing cable services for Defendant Comcast's customers.

32.     Defendant Comcast both hires employees and uses purported independent contractors, to perform their cable installation and cable repair services. Both the employees and the purported independent contractors who perform these responsibilities are under the control of and are economically dependent on Defendant Comcast regardless of how they are classified.

33.     Even though Plaintiffs are classified by Defendants as independent contractors, they are employees of Defendant Piron, Defendant Reynolds Quality, Defendant Aero Communications, and Defendant Comcast under the FLSA, and all Defendants in this case are their employers. The FLSA defines "employ" as including "to suffer or permit to work" and "employee" as "any individual employed by an employer." 29 U. S. C. §§ 203(g), (e). *See also, Keller v. Miri Microsystems LLC*, 781 F.3d 799 (6th Cir. 2015); *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984) (quoting *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139, 143 (6th Cir. 1977)).

34.     In addition to being employers under the economic realities test, Defendants are all vertical joint employers under the FLSA as vertical joint employment is described in the DOL AI-16.

35.     Defendants misclassified Plaintiffs as independent contractors, thus denying them the protections of employees under the FLSA. These protections include minimum wage for all hours worked and overtime pay for hours worked in excess of 40 hours per week. 29 U.S.C. §§ 206, 207. *See also,* DOL AI 15-1 (Exhibit A).

36.     In order for workers to be hired, Defendant Comcast requires individuals to contract with subcontractors like Defendant Piron and Defendant Reynolds Quality, who then contract with Defendant Aero Communications.

37.     However, in reality it is Defendant Comcast that is employing, assigning work to, and directing the work of, each cable technician. Defendant Comcast sets strict standards for all workers, and uses its subcontractors to enforce those standards.

38.     Defendant Comcast requires that all cable technicians pass its background check and a drug test before they would be issued their I.D. badge.  That badge displays the logos of both

Defendant Aero Communications, and Defendant Comcast. This condition controls eligibility to work for Defendant Piron and Defendant Reynolds Quality to such a degree that Defendants Comcast and Aero Communications had constructive authority to hire Plaintiffs. Also, Craig Monroe, a corporate officer of Defendant Piron, and Roderick Reynolds, a corporate officer of Defendant Reynolds Quality, told Plaintiffs that they needed to abide by Defendant Comcast's standard operating procedures, or else they would not be able to work for Defendant Comcast.

39.     Plaintiffs were required to work at least six days a week unless a formal request for a day off was made. "Whenever possible, technicians are encouraged to schedule absences from work two (2) weeks in advance. As outlined in Piron's time off and Holiday policies, such absences, when scheduled and *approved*, are considered excused absences, and generally will not lead to discipline." (Exhibit I, Piron Company Handbook, page 2 {page 5 of Exhibit}) (emphasis added).

40.     Plaintiffs were required to work 12 hour shifts, between 7:00 a.m. and 7:00 p.m. Therefore, Plaintiffs typically worked over 70 hours a week. Sometimes Plaintiffs had to work even longer if an assignment was particularly tough and it could not be completed by the twelfth hour.

41.     Cable technicians had a strict attendance policy set out in the Piron, LLC, Handbook. (Exhibit I, Piron Company Handbook, page 1 {page 4 of Exhibit}). It states, "The regular and on time attendance of technicians is critical for efficient business operation and continued success. Technicians are expected to be at work and ready to begin working at their scheduled start time and to remain at work until the end of their scheduled workday." *Id.* It goes on to lay out the consequences for a "NCNS offense" or a no call no show occurrence. The consequence of the first NCNS is a write up and the cable technician would be responsible for

costs associated with doing business. *Id.* The consequence for a second NCNS is a write up and a one-day suspension. *Id.* And the consequence for a third NCNS is termination. *Id.* The Handbook lays out similar consequences for tardiness. *Id.* Tardy is defined in the handbook as "meaning you arrive 30 minutes after start time." *Id.* The consequence for the first tardiness is a verbal warning; the second is a write up; the third is a write up and one day suspension; the fourth a write up and a two-day suspension; the fifth a write up and a three-day suspension; and the sixth resulting in termination. *Id.* at 3-4. Technicians who have excessive unscheduled absences, early departures and/or late arrivals that affect job performance and/or reflect a pattern of poor attendance may be subject to discipline, up to and including termination from *employment*. *Id.* at 3. (emphasis added). These regulations clearly show that Piron, LLC, had a high degree of right to control the manner in which the work is performed which is a factor of the analysis for whether a worker is an employee. *Donovan v. Brandel*, 736 F.2d 1114 (6th Cir. Mich. 1984) (citing *Dunlop v. Carriage Carpet Co.*, 548 F.2d 139 (6th Cir. 1977).

42.     Defendant Piron and Defendant Reynolds Quality did not require that their technicians to have prior experience performing cable installation work. Plaintiffs did not have any prior experience with cable installations or repairs.

43.     When Plaintiffs began working for Defendant Piron and Defendant Reynolds Quality, they were each assigned trainers. Plaintiffs were required to ride along with their trainers and learn through observation in the field. Plaintiffs trained for between three weeks and two months. (Exhibit D); (Exhibit E) (Exhibit F); (Exhibit G). Once the Plaintiffs caught on to a task, it was the Plaintiffs who were performing the tasks and the trainers would observe.

44.     Defendant Piron and Defendant Reynolds Quality made multiple different statements to the Plaintiffs regarding the amount they would be paid during their training period.

These promises included making $9.25 per hour; making 20% of money paid for the services; and making 50% of the money paid for the services. (Exhibit D); (Exhibit E); (Exhibit F); (Exhibit G). None of these promises were ever kept though. For example, Plaintiff Ali Suhail was only compensated $100.00 per week for the five weeks he worked for Defendants despite working over 70 hours a week.

45.     Once Plaintiffs passed Defendant Comcast's background check and drug test, they were issued I.D. badges bearing Defendant Comcast's logo, and were able to go into the field on their own.

46.     Plaintiffs would get their daily list of job assignments in the form of routes from an application on their phones called TechNet. TechNet is Defendant Comcast's application, used to assign and track all routing information. The routes were supplied by Defendant Comcast to direct where the Plaintiffs would work, and further directed what kind of work they would perform. Plaintiffs, and all cable technicians employed by Defendants, did not have any say in whether they accepted or declined the route assigned. (Exhibit D); (Exhibit E); (Exhibit F); (Exhibit G). The routes assigned by TechNet were mandatory assignments.

47.     Each route was made of installation and service repair assignments, some at residences and others at businesses. Each day Plaintiffs would drive varying lengths, because the routes were never the same. Due to the drive time from location to location, some days Plaintiffs would not finish their work until 10:00 p.m.

48.     The billing software cable technicians were mandated to use was Defendant Aero Communication's FIP Mobile application. Plaintiffs used the application to charge Defendant Comcast's customers for the services that cable technicians provided. Each different service had a different cost.

49.     Plaintiffs were required by Defendants to report to Defendant Aero Communications' warehouse at 7:00 a.m. every morning to check out the equipment they would need for the day. (Exhibit D); (Exhibit E); (Exhibit F); (Exhibit G). Defendant Aero Communications provided all of the cables, boxes, fittings, and other similar equipment that technicians needed to perform cable installation and repair work for Defendant Comcast's customers.   Specialized equipment, tools, and materials were used for different routes. The Plaintiffs were not required to bring their own tools or materials to work, and instead were required to check the proper tools and materials out at the beginning of each day.

50.     Since Plaintiffs worked such long shifts, their supervisors at Defendant Piron and Defendant Reynolds Quality told them that they could not work for any other business while they worked for them. (Exhibit D); (Exhibit E); (Exhibit F); (Exhibit G). Their supervisors told Plaintiffs they needed to be rested and therefore were not allowed to work for anyone else. Practically speaking, Plaintiffs did not even have the option for working for any other business performing cable installation or repairs because they typically worked 12 hours a day. Upon information and belief, Defendant Piron and Defendant Reynolds Quality had a policy that cable technicians could not work as cable technicians for any other business for 30 days after termination of their employment as well. (Exhibit D); (Exhibit E); (Exhibit F); (Exhibit G).

51.     When Plaintiffs were in the field they used two of Defendant Comcast's systems: Tech Support and Work Flow. Plaintiffs called Defendant Comcast's Tech Support center when they were on a cable installation or cable repair job and there were technical difficulties. Tech Support, which was a department made up of Defendant Comcast's employees, would help walk them through an issue or send a new signal to the device to try and resolve the issue with Plaintiffs. The second of Defendant Comcast's systems Plaintiffs used on a regular basis was Work Flow.

Work Flow had the power to control the TechNet application that provided the routes for Plaintiffs. Plaintiffs would regularly call Work Flow when they had an issue closing out a location on TechNet. Work Flow, like Tech Support, was a department that was also made up by employees of Defendant Comcast.

52.     Defendant Monroe, a corporate officer of Defendant Piron, and Defendant Reynolds, the owner of Defendant Reynolds Quality, would also call the Plaintiffs in the field to monitor their performance. If the Plaintiffs were not moving at a pace that Defendants Monroe and Reynolds thought was satisfactory, they would be reprimanded by the Defendants. Plaintiffs could be written up for a performance issue by Defendant Piron and Defendant Reynolds Quality if they were not keeping pace with their TechNet assignment assigned by Defendant Comcast.

53.     Defendant Comcast controlled the uniform and appearance of Plaintiffs and all cable technicians who provided services to Defendant Comcast's customers. Plaintiffs were required to wear a clean polo shirt with no logos visible and khaki pants. Plaintiffs were unable to wear hats or other articles of clothing or accessories that detracted from Defendant Comcast's uniform. All cable technicians were required to wear their badge with Defendant Comcast's logo on it. This uniform policy was enforced by Defendant Piron. (Exhibit I, Piron Company Handbook, page 5 {pages 6-7 of Exhibit})

54.     Plaintiffs received a few paychecks when they worked for Defendant, but not consistently, and they were not paid for all of their time worked. Payments for wages came in the form of money orders, company checks, and sometimes even cash. (Exhibit H). Defendants Piron and Reynolds Quality offered varying explanations for why payments were given in different forms. Plaintiffs were never compensated at the overtime rate of one and one-half their regular rate of pay for hours worked over 40 hours in a workweek. Also, damage claims were unilaterally taken

out of Plaintiffs paychecks by Defendants without showing any documentation to support the damage claims. Defendant Piron and Defendant Reynolds Quality would tell Plaintiffs that either the Plaintiffs made mistakes or there was faulty equipment installed and the customer was unhappy and therefore they could not charge for the installation service and that amount of money would be deducted from Plaintiffs' pay. When Plaintiffs asked if they could go back to try and correct the issue Defendants told Plaintiffs that was not a possibility. Plaintiffs never received any kind of time records or completion of services records.

55.     Plaintiffs brought the issue of improper payment, including instances in which no payment was given at all, to the attention of the managers of Defendant Piron and Defendant Reynolds Quality. The managers would consistently fail to remedy the situation, making excuses, blaming different managers for the mistakes, and generally giving Plaintiffs "the run-around". Plaintiffs ultimately ended up leaving the employment relationship with Defendant Piron and Defendant Reynold Quality because they were not paid for all of the time that they worked for Defendants.

## **COLLECTIVE ACTION ALLEGATIONS**

56.     Plaintiffs hereby repeat and reallege the preceding paragraphs as though fully set forth herein.

57.     Plaintiffs bring the FLSA claim in this action as a collective action under 29 U.S.C. § 216(b).

58.     Plaintiffs assert these claims on behalf of themselves, and on behalf of all similarly situated current and former employees (including those misclassified as independent contractors) of Defendant Piron and Defendant Reynolds Quality, who worked in Michigan, for Defendant

Comcast, who were not paid all compensation required by the FLSA during the relevant time period, as a result of Defendants' compensation policies and practices.

59.     Plaintiffs seek to notify the following employees of their right under 29 U.S.C. § 216(b) to join this action by filing in this Court written notice of their consent to join the action: All individuals who worked at any time during the past three years for the Defendant Piron and Defendant Reynolds Quality as cable technicians, who were not paid the minimum wage or did not receive the overtime wage premium of one and one-half times their regular rate of pay for hours worked in excess of 40 hours in a workweek.

60.     The FLSA provides for a three-year statute of limitations for causes of action arising out of a willful violation of that Act. 29 U.S.C. § 255. As alleged above, Plaintiffs' and similarly situated current and former employees' claims arise out of Defendants' willful violations of the FLSA. Accordingly, the Court should require appropriate notice of this action be given to all current and former cable technicians that worked for Defendant Piron and Defendant Reynolds Quality within three years from the filing of this Complaint.

61.     On information and belief to be true, Defendant Piron and Defendant Reynolds Quality have employed hundreds of similarly situated employees during the time period relevant to this action.

62.     The identities of these employees, as a group, are known only to Defendant Piron and Defendant Reynolds Quality. Because the numerous members of this collective action are unknown to Plaintiffs, joinder of each member is not practicable.

63.     Plaintiffs ask this Court to require Defendants to furnish Plaintiffs with the employee contact information of other similarly situated employees, because these similarly situated employees are readily identifiable to the Defendant Piron and Defendant Reynolds Quality

and may be located through their records, they may be readily notified of this action and allowed to opt into it pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their FLSA claims.

64.     Collective adjudication is appropriate in this case because the employees who Plaintiffs wish to notify of this action have been employed in the same position as Plaintiffs; have performed work similar to Plaintiffs; have been subject to the same policies and procedures as Plaintiffs; and have been subject to compensation practices similar to those which form the basis of Plaintiffs' case, including unlawful failure to pay the minimum wage and overtime premiums under the FLSA.

### COUNT I

### Defendant Piron- Violation of the Minimum Wage Provision of the FLSA

65.     Plaintiffs hereby repeat and reallege all preceding paragraphs as though fully set forth herein.

66.     Plaintiffs were "employees" of Defendant Piron, as that term is defined by the FLSA, 29 U.S.C. § 203(e), because Defendant Piron "suffered or permitted" Plaintiffs to work for them.

67.     Defendant was Plaintiffs "employer," as defined by the FLSA, 29 U.S.C. § 203(d), because Defendant Piron "suffered or permitted" Plaintiffs to work for it.

68.     Defendant Piron is an "enterprise" as defined by the FLSA, 29 U.S.C. § 204(r)(1), and is an enterprise engaged in processing and handling of supplies and equipment which moved in interstate commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

69.     Defendant Piron is required to comply with the requirements of the FLSA.

70.     Plaintiffs were covered employees entitled to the protections of the FLSA and are not exempt from the minimum wage provision of the FLSA.

71.     The minimum wage provision of FLSA, 29 U.S.C. § 206, requires employers to pay employees at least the minimum wage for all time worked.

72.     Defendant Piron has failed to pay Plaintiffs in compliance with the FLSA because they were not paid at least the minimum wage for all hours worked in accordance with 29 U.S.C. § 206.

73.     In addition to compensatory damages for their unpaid wages, Plaintiffs are owed liquidated damages in an amount equal to their compensatory damages pursuant to the FLSA, 29 U.S.C. § 216(b), and their reasonable attorneys' fees, to be paid by the Defendant Piron for its willful failure to pay at least the minimum wage for all hours worked by Plaintiffs.

WHEREFORE, Plaintiffs respectfully request that the court enter judgment against Defendant Piron and in favor of Plaintiffs, declare that Defendant Piron willfully violated the minimum wage provisions of the FLSA, and grant Plaintiffs compensatory damages in an amount to be determined at trial, along with liquidated damages in an amount equal to their compensatory damages, and reasonable attorneys' fees and costs incurred in prosecuting this claim.

## **COUNT II**

### **Defendant Piron- Violation of the Overtime Wage Provision of the FLSA**

74.     Plaintiffs hereby repeat and reallege all preceding paragraphs as though fully set forth herein.

75.     Plaintiffs were "employees" of Defendant Piron, as that term is defined by the FLSA, 29 U.S.C. § 203(e), because Defendant Piron "suffered or permitted" Plaintiffs to work for it.

76.    Defendant Piron was Plaintiffs "employer," as defined by the FLSA, 29 U.S.C. § 203(d), because Defendant Piron "suffered or permitted" Plaintiffs to work for it.

77.    Defendant Piron is an "enterprise" as defined by the FLSA, 29 U.S.C. § 204(r)(1), and is an enterprise engaged in processing and handling of supplies and equipment which moved in interstate commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

78.    Defendant Piron is required to comply with the requirements of the FLSA.

79.    Plaintiffs are covered employees entitled to the protections of the FLSA and are not exempt from the overtime wage provision of the FLSA.

80.    The overtime wage provision of FLSA, 29 U.S.C. § 207, requires employers to pay an overtime premium of one and one-half times an employee's regular rate for every hour worked over 40 hours in a workweek.

81.    Defendant Piron did not pay Plaintiffs one and one-half of their regular rate of pay for hours worked over 40 hours in a workweek.

82.    Defendant Piron willfully failed to pay Plaintiffs the required overtime wage premium when Plaintiffs worked more than 40 hours in a workweek, in violation of the FLSA.

83.    In addition to compensatory damages for the required overtime wage premium, Plaintiffs are owed liquidated damages in an amount equal to their compensatory damages pursuant to the FLSA, 29 U.S.C. § 216(b), and their reasonable attorneys' fees, to be paid by the Defendant Piron for their willful failure to pay at least the overtime wage premium for all overtime hours worked by Plaintiffs.

WHEREFORE, Plaintiffs respectfully request that the court enter judgment against Defendant Piron and in favor of Plaintiffs, declare that Defendant Piron willfully violated the overtime wage provisions of the FLSA, and grant Plaintiffs compensatory damages in an amount

to be determined at trial, along with liquidated damages in an amount equal to their compensatory damages, and reasonable attorneys' fees and costs incurred in prosecuting this claim.

## COUNT III

### Defendant Steve Hannah- Violation of the Minimum Wage Provision of the FLSA

84.    Plaintiffs hereby repeat and reallege all preceding paragraphs as though fully set forth herein.

85.    Defendant Hannah was an employer of Plaintiffs under 29 U.S.C. 203(e) because he "suffered or permitted" Plaintiffs to work for him.

86.    Defendant Hannah, upon information and belief to be true, has ownership interest in the enterprise Piron, LLC, which employed Plaintiffs.

87.    Defendant Hannah has operational control of Piron, LLC, one of the subcontracting companies at issue in this case. Defendant Hannah oversees the pay policies and signs off on all of the payroll for Piron, LLC.

88.    As an employer of Plaintiffs and putative class members, Defendant Hannah is required to comply with the requirements of the FLSA.

89.    Defendant Hannah willfully failed to comply with the minimum wage provision of the FLSA.

90.    Under the theory of Corporate Officer Liability adopted by this circuit in *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (1991), Defendant Hannah is jointly and severally liable for the violations of the FLSA.

WHEREFORE, Plaintiffs respectfully request that the court enter judgment against Defendant Hannah and in favor of Plaintiffs, declare that Defendant Hannah willfully violated the minimum wage provision of the FLSA, and grant Plaintiffs compensatory damages in an amount

to be determined at trial, along with liquidated damages in an amount equal to their compensatory damages, and reasonable attorneys' fees and costs incurred in prosecuting this claim.

## COUNT IV

### Defendant Steve Hannah- Violation of the Overtime Wage Provision of the FLSA

91.     Plaintiffs hereby repeat and reallege all preceding paragraphs as though fully set forth herein.

92.     Defendant Hannah was an employer of Plaintiffs under 29 U.S.C. 203(e) because he "suffered or permitted" Plaintiffs to work for him.

93.     Defendant Hannah, upon information and belief to be true, has ownership interest in the enterprise Piron, LLC, which employed Plaintiffs.

94.     Defendant Hannah has operational control of Piron, LLC, one of the subcontracting companies at issue in this case. Defendant Hannah oversees the pay policies and signs off on all of the payroll for Piron, LLC.

95.     As an employer of Plaintiffs and putative class members, Defendant Hannah is required to comply with the requirements of the FLSA.

96.     Defendant Hannah willfully failed to comply with the overtime wage provision of the FLSA.

97.     Under the theory of Corporate Officer Liability adopted by this circuit in *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (1991), Defendant Hannah is jointly and severally liable for the violations of the FLSA.

WHEREFORE, Plaintiffs respectfully request that the court enter judgment against Defendant Hannah and in favor of Plaintiffs, declare that Defendant Hannah willfully violated the overtime wage provision of the FLSA, and grant Plaintiffs compensatory damages in an amount

to be determined at trial, along with liquidated damages in an amount equal to their compensatory damages, and reasonable attorneys' fees and costs incurred in prosecuting this claim.

## COUNT V

### Defendant Craig Monroe- Violation of the Minimum Wage Provision of the FLSA

98.     Plaintiffs hereby repeat and reallege all preceding paragraphs as though fully set forth herein.

99.     Defendant Monroe was an employer of Plaintiffs under 29 U.S.C. 203(e) because he "suffered or permitted" Plaintiffs to work for him.

100.     Defendant Monroe has operational control of Piron, LLC, one of the subcontracting companies at issue in this case. Defendant Monroe is in charge of the pay policies and signs off on all of the payroll for Piron, LLC.

101.     As an employer of Plaintiffs and putative class members, Defendant Monroe is required to comply with the requirements of the FLSA.

102.     Defendant Monroe willfully failed to comply with the minimum wage provision of the FLSA.

103.     Under the theory of Corporate Officer Liability adopted by this circuit in *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (1991), Defendant Monroe is jointly and severally liable for the violations of the FLSA.

WHEREFORE, Plaintiffs respectfully request that the court enter judgment against Defendant Monroe and in favor of Plaintiffs, declare that Defendant Monroe willfully violated the minimum wage provision of the FLSA, and grant Plaintiffs compensatory damages in an amount to be determined at trial, along with liquidated damages in an amount equal to their compensatory damages, and reasonable attorneys' fees and costs incurred in prosecuting this claim.

## COUNT VI

## Defendant Craig Monroe- Violation of the Overtime Wage Provision of the FLSA

104.     Plaintiffs hereby repeat and reallege all preceding paragraphs as though fully set forth herein.

105.     Defendant Monroe was an employer of Plaintiffs under 29 U.S.C. 203(e) because he "suffered or permitted" Plaintiffs to work for him.

106.     Defendant Monroe has operational control of Piron, LLC, one of the subcontracting companies at issue in this case. Defendant Monroe is in charge of the pay policies and signs off on all of the payroll for Piron, LLC.

107.     As an employer of Plaintiffs and putative class members, Defendant Monroe is required to comply with the requirements of the FLSA.

108.     Defendant Monroe willfully failed to comply with the overtime wage provision of the FLSA.

109.     Under the theory of Corporate Officer Liability adopted by this circuit in *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (1991), Defendant Monroe is jointly and severally liable for the violations of the FLSA.

WHEREFORE, Plaintiffs respectfully request that the court enter judgment against Defendant Monroe and in favor of Plaintiffs, declare that Defendant Monroe willfully violated the overtime wage provision of the FLSA, and grant Plaintiffs compensatory damages in an amount to be determined at trial, along with liquidated damages in an amount equal to their compensatory damages, and reasonable attorneys' fees and costs incurred in prosecuting this claim.

## COUNT VII

## Defendant Reynolds Quality- Violation of the Minimum Wage Provision of the FLSA

110.    Plaintiffs hereby repeat and reallege all preceding paragraphs as though fully set forth herein.

111.    Plaintiffs were "employees" of Defendant Reynolds Quality, as that term is defined by the FLSA, 29 U.S.C. § 203(e), because Defendant Reynolds Quality "suffered or permitted" Plaintiffs to work for it.

112.    Defendant Reynolds Quality was Plaintiffs "employer," as defined by the FLSA, 29 U.S.C. § 203(d), because Defendant Reynolds Quality "suffered or permitted" Plaintiffs to work for it.

113.    Defendant Reynolds Quality is an "enterprise" as defined by the FLSA, 29 U.S.C. § 204(r)(1), and is an enterprise engaged in processing and handling of supplies and equipment which moved in interstate commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

114.    Defendant Reynolds Quality is required to comply with the requirements of the FLSA.

115.    Plaintiffs are covered employees entitled to the protections of the FLSA and are not exempt from the minimum wage provisions of the FLSA.

116.    The minimum wage provisions of FLSA, 29 U.S.C. § 206, requires employers to pay employees at least the minimum wage for all time worked.

117.    Defendant Reynolds Quality has failed to pay Plaintiffs in compliance with the FLSA because they were not paid at least the minimum wage for all hours worked in accordance with 29 U.S.C. § 206.

118.     In addition to compensatory damages for their unpaid wages, Plaintiffs are owed liquidated damages in an amount equal to their compensatory damages pursuant to the FLSA, 29 U.S.C. § 216(b), and their reasonable attorneys' fees, to be paid by the Defendant Reynolds Quality for their willful failure to pay at least the minimum wage for all hours worked by Plaintiffs.

WHEREFORE, Plaintiffs respectfully request that the court enter judgment against Defendant Reynolds Quality and in favor of Plaintiffs, declare that Defendant Reynolds Quality willfully violated the minimum wage provisions of the FLSA, and grant Plaintiffs compensatory damages in an amount to be determined at trial, along with liquidated damages in an amount equal to their compensatory damages, and reasonable attorneys' fees and costs incurred in prosecuting this claim.

## COUNT VIII

## Defendant Reynolds Quality- Violation of the Overtime Wage Provision of the FLSA

119.     Plaintiffs hereby repeat and reallege all preceding paragraphs as though fully set forth herein.

120.     Plaintiffs were "employees" of Defendant Reynolds Quality, as that term is defined by the FLSA, 29 U.S.C. § 203(e), because Defendant Reynolds Quality "suffered or permitted" Plaintiffs to work for it.

121.     Defendant Reynolds Quality was Plaintiffs "employer," as defined by the FLSA, 29 U.S.C. § 203(d), because Defendant Reynolds Quality "suffered or permitted" Plaintiffs to work for it.

122.     Defendant Reynolds Quality is an "enterprise" as defined by the FLSA, 29 U.S.C. § 204(r)(1), and is an enterprise engaged in processing and handling of supplies and equipment which moved in interstate commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

123. Defendant Reynolds Quality is required to comply with the requirements of the FLSA.

124. Plaintiffs were covered employees entitled to the protections of the FLSA and are not exempt from the overtime wage provision of the FLSA.

125. The overtime wage provision of FLSA, 29 U.S.C. § 207, requires employers to pay an overtime premium of one and one-half times an employee's regular rate for every hour worked over 40 hours in a workweek.

126. Defendant Reynolds Quality did not pay Plaintiffs one and one-half of their regular rate of pay for hours worked over 40 hours in a workweek.

127. Defendant Reynolds Quality willfully failed to pay Plaintiffs the required overtime wage premium when Plaintiffs worked more than 40 hours in a workweek, in violation of the FLSA.

128. In addition to compensatory damages for the required overtime wage premium, Plaintiffs are owed liquidated damages in an amount equal to their compensatory damages pursuant to the FLSA, 29 U.S.C. § 216(b), and their reasonable attorneys' fees, to be paid by the Defendant Reynolds Quality for their willful failure to pay at least the overtime wage premium for all hours worked by Plaintiffs.

WHEREFORE, Plaintiffs respectfully request that the court enter judgment against Defendant Reynolds Quality and in favor of Plaintiffs, declare that Defendant Reynolds Quality willfully violated the overtime wage provisions of the FLSA, and grant Plaintiffs compensatory damages in an amount to be determined at trial, along with liquidated damages in an amount equal to their compensatory damages, and reasonable attorneys' fees and costs incurred in prosecuting this claim.

## COUNT IX

## Defendant Roderick Reynolds Jr. - Violation of the Minimum Wage Provision of the FLSA

129.    Plaintiffs hereby repeat and reallege all preceding paragraphs as though fully set forth herein.

130.    Defendant Reynolds was an employer of Plaintiffs under 29 U.S.C. 203(e) because he "suffered or permitted" Plaintiffs to work for him.

131.    Defendant Reynolds, upon information and belief to be true, has ownership interest in the enterprise Reynolds Quality Installations, LLC, which employed Plaintiffs.

132.    Defendant Reynolds has operational control of Reynolds Quality Installations, LLC, one of the subcontracting companies at issue in this case. Defendant Reynolds is in charge of the pay policies and signs off on all of the payroll for Reynolds Quality Installation, LLC.

133.    As an employer of Plaintiffs and putative class members, Defendant Reynolds is required to comply with the requirements of the FLSA.

134.    Defendant Reynolds willfully failed to comply with the minimum wage provision of the FLSA.

135.    Under the theory of Corporate Officer Liability adopted by this circuit in *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (1991), Defendant Reynolds is jointly and severally liable for the violations of the FLSA.

WHEREFORE, Plaintiffs respectfully request that the court enter judgment against Defendant Reynolds and in favor of Plaintiffs, declare that Defendant Reynolds willfully violated the minimum wage provision of the FLSA, and grant Plaintiffs compensatory damages in an amount to be determined at trial, along with liquidated damages in an amount equal to their

compensatory damages, and reasonable attorneys' fees and costs incurred in prosecuting this claim.

## COUNT X

### Defendant Roderick Reynolds Jr. - Violation of the Overtime Provision of the FLSA

136.    Plaintiffs hereby repeat and reallege all preceding paragraphs as though fully set forth herein.

137.    Defendant Reynolds was an employer of Plaintiffs under 29 U.S.C. 203(e) because he "suffered or permitted" Plaintiffs to work for him.

138.    Defendant Reynolds, upon information and belief to be true, has ownership interest in the enterprise Reynolds Quality Installations, LLC, which employed Plaintiffs.

139.    Defendant Reynolds has operational control of Reynolds Quality Installations, LLC, one of the subcontracting companies at issue in this case. Defendant Reynolds is in charge of the pay policies and signs off on all of the payroll for Reynolds Quality Installation, LLC.

140.    As an employer of Plaintiffs and putative class members, Defendant Reynolds is required to comply with the requirements of the FLSA.

141.    Defendant Reynolds willfully failed to comply with the overtime wage provision of the FLSA.

142.    Under the theory of Corporate Officer Liability adopted by this circuit in *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (1991), Defendant Reynolds is jointly and severally liable for the violations of the FLSA.

WHEREFORE, Plaintiffs respectfully request that the court enter judgment against Defendant Reynolds and in favor of Plaintiffs, declare that Defendant Reynolds willfully violated the overtime wage provision of the FLSA, and grant Plaintiffs compensatory damages in an

amount to be determined at trial, along with liquidated damages in an amount equal to their compensatory damages, and reasonable attorneys' fees and costs incurred in prosecuting this claim.

## COUNT XI

### Defendant Aero Communications- Violation of the Minimum Wage Provision of the FLSA

143. Plaintiffs hereby repeat and reallege all preceding paragraphs as though fully set forth herein.

144. Defendant Aero Communications was a joint employer of Plaintiffs. 29 C.F.R. § 791.2. Defendant Aero Communications is a contractor for Defendant Comcast who provides Defendant Comcast with workers to provide services to Defendant Comcast's customers. Defendant Aero Communications was an intermediary employer between Defendants Piron and Reynolds Quality, as subcontractors, and Defendant Comcast, as the employer who used the workers for their services. Plaintiffs were economically dependent on Defendant Aero Communications and were employees. *See e.g., Perez v. Lantern Light Corp.*, No. C12-01406, 2015 U.S. Dist. LEXIS 69933 *3 (W.D. Wash. May 29, 2015) (where company has contracted for workers who are directly employed by an intermediary, court applies vertical joint employment analysis to relationship between company and workers) (Exhibit Q); *Carrillo v. Schneider Logistics Trans-Loading & Distrib., Inc.*, No. 11-cv-8557, 2014 U.S. Dist. LEXIS 5379, 2014 WL 183956, at *9-15 (C.D. Cal. Jan. 14, 2014) (warehouse workers whose labor is arranged and overseen by layers of intermediaries between the workers and the owner or operator of the warehouse facility) (Exhibit L); *Berrocal v. Moody Petrol., Inc.*, No. 07-22549, 2010 U.S. Dist. LEXIS 40867, 2010 WL 1372410 at *11 n.16 (S.D. Fla. Mar. 31, 2010) (vertical joint employment may exist when "an employer hires laborers through a third party labor contractor") (Exhibit K).

145.     Plaintiffs were "employees" of Defendant Aero Communications, as that term is defined by the FLSA, 29 U.S.C. § 203(e), because Defendant Aero Communications "suffered or permitted" Plaintiffs to work for them.

146.     Defendant was Plaintiffs "employer," as defined by the FLSA, 29 U.S.C. § 203(d), because Defendant Aero Communications "suffered or permitted" Plaintiffs to work for it.

147.     Defendant Aero Communications is an "enterprise" as defined by the FLSA, 29 U.S.C. § 204(r)(1), and is an enterprise engaged in processing and handling of supplies and equipment which moved in interstate commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

148.     Defendant Aero Communications is required to comply with the requirements of the FLSA.

149.     Plaintiffs were covered employees entitled to the protections of the FLSA and were not exempt from the minimum wage provision of the FLSA.

150.     The minimum wage provision of FLSA, 29 U.S.C. § 206, requires employers to pay employees at least the minimum wage for all time worked.

151.     Defendant Aero Communications has failed to pay Plaintiffs in compliance with the FLSA because they were not paid at least the minimum wage for all hours worked in accordance with 29 U.S.C. § 206.

152.     In addition to compensatory damages for their unpaid wages, Plaintiffs are owed liquidated damages in an amount equal to their compensatory damages pursuant to the FLSA, 29 U.S.C. § 216(b), and their reasonable attorneys' fees, to be paid by the Defendant Aero Communications for their willful failure to pay at least the minimum wage for all hours worked by Plaintiffs.

WHEREFORE, Plaintiffs respectfully request that the court enter judgment against Defendant Aero Communications and in favor of Plaintiffs, declare that Defendant Aero Communications willfully violated the minimum wage provisions of the FLSA, and grant Plaintiffs compensatory damages in an amount to be determined at trial, along with liquidated damages in an amount equal to their compensatory damages and reasonable attorneys' fees and costs incurred in prosecuting this claim.

## COUNT XII

### Defendant Aero Communications- Violation of the Overtime Provision of the FLSA

153.     Plaintiffs hereby repeat and reallege all preceding paragraphs as though fully set forth herein.

154.     Defendant Aero Communications was a joint employer of Plaintiffs. 29 C.F.R. § 791.2. Defendant Aero Communications is a contractor of Defendant Comcast's and provides workers who provide services to Defendant Comcast customers. Defendant Aero Communications was an intermediary employer between Defendant Piron and Defendant Reynolds Quality, as subcontractor, and Defendant Comcast, as the employer who used the workers for their services. Plaintiffs were economically dependent on Defendant Aero Communications and were employees. *See e.g., Perez v. Lantern Light Corp.*, No. C12-01406, 2015 U.S. Dist. LEXIS 69933 *3 (W.D. Wash. May 29, 2015) (where company has contracted for workers who are directly employed by an intermediary, court applies vertical joint employment analysis to relationship between company and workers) (Exhibit Q); *Carrillo v. Schneider Logistics Trans-Loading & Distrib., Inc.*, No. 11-cv-8557, 2014 U.S. Dist. LEXIS 5379, 2014 WL 183956, at *9-15 (C.D. Cal. Jan. 14, 2014) (warehouse workers whose labor is arranged and overseen by layers of intermediaries between the workers and the owner or operator of the warehouse facility) (Exhibit L); *Berrocal v. Moody*

*Petrol., Inc.,* No. 07-22549, 2010 U.S. Dist. LEXIS 40867, 2010 WL 1372410 at *11 n.16 (S.D. Fla. Mar. 31, 2010) (vertical joint employment may exist when "an employer hires laborers through a third party labor contractor") (Exhibit K).

155.    Plaintiffs were "employees" of Defendant Aero Communications, as that term is defined by the FLSA, 29 U.S.C. § 203(e), because Defendant Aero Communications "suffered or permitted" Plaintiffs to work for it.

156.    Defendant Aero Communications was Plaintiffs "employer," as defined by the FLSA, 29 U.S.C. § 203(d), because Defendant Aero Communications "suffered or permitted" Plaintiffs to work for it.

157.    Defendant Aero Communication is an "enterprise" as defined by the FLSA, 29 U.S.C. § 204(r)(1), and is an enterprise engaged in processing and handling of supplies and equipment which moved in interstate commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

158.    Defendant Aero Communications is required to comply with the requirements of the FLSA.

159.    Plaintiffs were covered employees entitled to the protections of the FLSA and were not exempt from the overtime wage provision of the FLSA.

160.    The overtime wage provision of FLSA, 29 U.S.C. § 207, requires employers to pay an overtime premium of one and one-half times an employee's regular rate for every hour worked over 40 hours in a workweek.

161.    Defendant Aero Communications did not pay Plaintiffs one and one-half of their regular rate of pay for hours worked over 40 hours in a workweek.

162. Defendant Aero Communications willfully failed to pay Plaintiffs the required overtime wage premium when Plaintiffs worked more than 40 hours in a workweek, in violation of the FLSA.

163. In addition to compensatory damages for the required overtime wage premium, Plaintiffs are owed liquidated damages in an amount equal to their compensatory damages pursuant to the FLSA, 29 U.S.C. § 216(b), and their reasonable attorneys' fees, to be paid by the Defendant Aero Communications for their willful failure to pay at least the overtime wage premium for all hours worked by Plaintiffs.

WHEREFORE, Plaintiffs respectfully request that the court enter judgment against Defendant Aero Communications and in favor of Plaintiffs, declare that Defendant Aero Communications willfully violated the overtime wage provisions of the FLSA, and grant Plaintiffs compensatory damages in an amount to be determined at trial, along with liquidated damages in an amount equal to their compensatory damages and reasonable attorneys' fees and costs incurred in prosecuting this claim.

## COUNT XIII

### Defendant Comcast- Violation of the Minimum Wage Provision of the FLSA

164. Plaintiffs hereby repeat and reallege all preceding paragraphs as though fully set forth herein.

165. Defendant Comcast was a joint employer of Plaintiffs. 29 C.F.R. § 791.2. Defendant Comcast contracted out work through several layers of fissuring to hire workers to perform services for their customers. Defendant Comcast is a vertical joint employer of Plaintiffs. Defendant Comcast set a number of policies and procedures that they enforced through Defendant Aero Communications, Defendant Piron, and Defendant Reynolds Quality. Plaintiffs were

economically dependent on Defendant Comcast and were Defendant Comcast's employees. *See e.g., Perez v. Lantern Light Corp.*, No. C12-01406, 2015 U.S. Dist. LEXIS 69933 *3 (W.D. Wash. May 29, 2015) (where company has contracted for workers who are directly employed by an intermediary, court applies vertical joint employment analysis to relationship between company and workers) (Exhibit Q); *Carrillo v. Schneider Logistics Trans-Loading & Distrib., Inc.,* No. 11-cv-8557, 2014 U.S. Dist. LEXIS 5379, 2014 WL 183956, at *9-15 (C.D. Cal. Jan. 14, 2014) (warehouse workers whose labor is arranged and overseen by layers of intermediaries between the workers and the owner or operator of the warehouse facility) (Exhibit L); *Berrocal v. Moody Petrol., Inc.*, No. 07-22549, 2010 U.S. Dist. LEXIS 40867, 2010 WL 1372410 at *11 n.16 (S.D. Fla. Mar. 31, 2010) (vertical joint employment may exist when "an employer hires laborers through a third party labor contractor") (Exhibit K).

166.    Plaintiffs were "employees" of Defendant Comcast, as that term is defined by the FLSA, 29 U.S.C. § 203(e), because Defendant Comcast "suffered or permitted" Plaintiffs to work for them.

167.    Defendant Comcast was Plaintiffs "employer," as defined by the FLSA, 29 U.S.C. § 203(d), because Defendant Comcast "suffered or permitted" Plaintiffs to work for it.

168.    Defendant Comcast is an "enterprise" as defined by the FLSA, 29 U.S.C. § 204(r)(1), and is an enterprise engaged in processing and handling of supplies and equipment which moved in interstate commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

169.    Defendant Comcast is required to comply with the requirements of the FLSA.

170.    Plaintiffs were covered employees entitled to the protections of the FLSA and were not exempt from the minimum wage provisions of the FLSA.

171.     The minimum wage provisions of FLSA, 29 U.S.C. § 206, requires employers to pay employees at least the minimum wage for all time worked.

172.     Defendant Comcast has failed to pay Plaintiffs in compliance with the FLSA because they were not paid at least the minimum wage for all hours worked in accordance with 29 U.S.C. § 206.

173.     In addition to compensatory damages for their unpaid wages, Plaintiffs are owed liquidated damages in an amount equal to their compensatory damages pursuant to the FLSA, 29 U.S.C. § 216(b), and their reasonable attorneys' fees, to be paid by the Defendant Comcast for their willful failure to pay at least the minimum wage for all hours worked by Plaintiffs.

WHEREFORE, Plaintiffs respectfully request that the court enter judgment against Defendant Comcast and in favor of Plaintiffs, declare that Defendant Comcast willfully violated the minimum wage provisions of the FLSA, and grant Plaintiffs compensatory damages in an amount to be determined at trial, along with liquidated damages in an amount equal to their compensatory damages, and reasonable attorneys' fees and costs incurred in prosecuting this claim.

## COUNT XIV

### Defendant Comcast- Violation of the Overtime Provision of the FLSA

174.     Plaintiffs hereby repeat and reallege all preceding paragraphs as though fully set forth herein.

175.     Defendant Comcast was a joint employer of Plaintiffs. 29 C.F.R. § 791.2. Defendant Comcast contracted out work through several layers of fissuring to hire workers to perform services for their customers. Defendant Comcast is a vertical joint employer of Plaintiffs.

Defendant Comcast set a number of policies and procedures that they enforced through Defendant Aero Communications, Defendant Piron, and Defendant Reynolds Quality. Plaintiffs were economically dependent on Comcast and were Defendant Comcast's employees. *See e.g., Perez v. Lantern Light Corp.*, No. C12-01406, 2015 U.S. Dist. LEXIS 69933 *3 (W.D. Wash. May 29, 2015) (where company has contracted for workers who are directly employed by an intermediary, court applies vertical joint employment analysis to relationship between company and workers) (Exhibit Q); *Carrillo v. Schneider Logistics Trans-Loading & Distrib., Inc.*, No. 11-cv-8557, 2014 U.S. Dist. LEXIS 5379, 2014 WL 183956, at *9-15 (C.D. Cal. Jan. 14, 2014) (warehouse workers whose labor is arranged and overseen by layers of intermediaries between the workers and the owner or operator of the warehouse facility) (Exhibit L); *Berrocal v. Moody Petrol., Inc.*, No. 07-22549, 2010 U.S. Dist. LEXIS 40867, 2010 WL 1372410 at *11 n.16 (S.D. Fla. Mar. 31, 2010) (vertical joint employment may exist when "an employer hires laborers through a third party labor contractor") (Exhibit K).

176. Plaintiffs were "employees" of Defendant Comcast, as that term is defined by the FLSA, 29 U.S.C. § 203(e), because Defendant Comcast "suffered or permitted" Plaintiffs to work for it.

177. Defendant Comcast was Plaintiffs "employer," as defined by the FLSA, 29 U.S.C. § 203(d), because Defendant Comcast "suffered or permitted" Plaintiffs to work for it.

178. Defendant Comcast is an "enterprise" as defined by the FLSA, 29 U.S.C. § 204(r)(1), and is an enterprise engaged in processing and handling of supplies and equipment which moved in interstate commerce within the meaning of the FLSA. 29 U.S.C. § 203(s)(1).

179. Defendant Comcast is required to comply with the requirements of the FLSA.

180.     Plaintiffs were covered employees entitled to the protections of the FLSA and were not exempt from the overtime wage provision of the FLSA.

181.     The overtime wage provision of FLSA, 29 U.S.C. § 207, requires employers to pay an overtime premium of one and one-half times an employee's regular rate for every hour worked over 40 hours in a workweek.

182.     Defendant Comcast did not pay Plaintiffs one and one-half of their regular rate of pay for hours worked over 40 hours in a workweek.

183.     Defendant Comcast willfully failed to pay Plaintiffs the required overtime wage premium when Plaintiffs worked more than 40 hours in a workweek, in violation of the FLSA.

184.     In addition to compensatory damages for the required overtime wage premium, Plaintiffs are owed liquidated damages in an amount equal to their compensatory damages pursuant to the FLSA, 29 U.S.C. § 216(b), and their reasonable attorneys' fees, to be paid by the Defendant Comcast for their willful failure to pay at least the overtime wage premium for all hours worked by Plaintiffs.

WHEREFORE, Plaintiffs respectfully request that the court enter judgment against Defendant Comcast and in favor of Plaintiffs, declare that Defendant Comcast willfully violated the overtime wage provisions of the FLSA, and grant Plaintiffs compensatory damages in an amount to be determined at trial, along with liquidated damages in an amount equal to their compensatory damages, and reasonable attorneys' fees and costs incurred in prosecuting this claim.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court grant the following relief:

A.     The actions of Defendants complained of herein be adjudicated, decreed, and declared a violation of Defendants' obligations under the FLSA;

B.     Find that Defendants willfully violated the FLSA, and enter judgment in Plaintiffs' favor and accordingly against Defendants, jointly and severally;

C.     Certify the federal-law claims in this case as a collective action under Section 16(b) of the FLSA, 29 U.S.C. § 216(b), and require that notice of their right to join this action by filing with this Court written consent to do so be given to all of Defendants' workers who are similarly situated to Plaintiffs;

D.     Declare the rights of the parties and provide commensurate injunctive relief;

E.     Award any compensatory damages due to Plaintiffs for any unpaid wages together with an equal amount in liquidated damages according to the applicable statutes of limitations;

F.     Award liquidated damages to Plaintiffs equal to the amount of unpaid back wages, pursuant to the FLSA;

G.     Award prejudgment interest with respect to the total amount of unpaid compensation to the extent permitted by applicable law;

H.     Establish a constructive trust, until further order of the Court, consisting of monies improperly withheld by Defendants due to its above-described improper conduct;

I.     Award reasonable attorneys' fees and costs to Plaintiffs' counsel as allowed by applicable law and statute; and

J.     Award such other and further relief as the Court deems just and appropriate.

## JURY DEMAND

NOW COME Plaintiff Suhail Ali, Plaintiff Shalan Almansoob, Plaintiff Qasem Saleh, and Plaintiff Kassem Dubaishi, by and through their attorneys, THE LAW OFFICES OF BRYAN

YALDOU, PLLC, on behalf of themselves and others similarly situated, and hereby demands a

trial by jury of the above entitled matter.

/s/ Bryan Yaldou
Bryan Yaldou (P70600)
Omar Badr (P70966)
LAW OFFICES OF
BRYAN YALDOU, PLLC
23000 Telegraph, Suite 5
Brownstown, MI 48134
Phone: (734) 692-9200
Fax: (734) 692-9201
bryan@yaldoulaw.com
*Attorneys for Plaintiffs*

Dated: March 24, 2017