UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SUHAIL ALI, SHALAN ALMANSOOB, QASEM SALEH, and KASSEM DUBAISHI, on behalf of themselves and all other persons similarly situated, known and unknown,<br><br>Plaintiffs,<br><br>vs.<br><br>PIRON, LLC, STEVE HANNAH, CRAIG MONROE, REYNOLDS QUALITY INSTALLATIONS, LLC, RODERICK REYNOLDS JR., AERO COMMUNICATIONS, INC, and COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, a Michigan for-profit company, and owners of said Michigan for-profit company,<br><br>Defendants. | Case No. 17-cv-11012<br>Hon. Linda V. Parker |

/

## AERO COMMUNICATIONS, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

Defendant Aero Communications, Inc. ("Aero"), by and through its undersigned counsel, moves this Court pursuant to Fed. R. Civ. P. 12(b)(6) for dismissal of Plaintiffs' Complaint against Aero on the basis that Plaintiffs have failed to allege facts sufficient to establish that Aero was their joint employer for

the purposes of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq. In support of its Motion, Aero relies on the attached Brief in Support, Plaintiffs' Complaint, and Plaintiffs' affidavits attached to their Complaint.

Pursuant to Local Rule 7.1 and this Court's Practice Guidelines, the undersigned discussed this motion with Plaintiffs' counsel by telephone on May 9, 2017, May 16, 2017, and May 23, 2017.  Plaintiffs' counsel does not concur in the relief sought in this Motion.

WHEREFORE, Defendant Aero requests that this Court grant its Motion to Dismiss, dismiss Aero from Plaintiffs' lawsuit in its entirety, and award Aero its costs, attorneys' fees or any other relief it deems appropriate.

Respectfully submitted,

CLARK HILL PLC

By:  s/ Ellen E. Hoeppner
     Daniel J. Bretz (P34334)
     Ellen E. Hoeppner (P73831)
     500 Woodward Avenue, Suite 3500
     Detroit, MI  48226
     (313) 965-8300
     Attorneys for Defendant Aero
     dbretz@clarkhill.com

May 26, 2017        ehoeppner@clarkhill.com

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| SUHAIL ALI, SHALAN ALMANSOOB, QASEM SALEH, and KASSEM DUBAISHI, on behalf of themselves and all other persons similarly situated, known and unknown, | ) ) ) ) ) ) | Case No. 17-cv-11012 Hon. Linda V. Parker |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) ) | |
| PIRON, LLC, STEVE HANNAH, CRAIG MONROE, REYNOLDS QUALITY INSTALLATIONS, LLC, RODERICK REYNOLDS JR., AERO COMMUNICATIONS, INC, and COMCAST CABLE COMMUNICATIONS MANAGEMENT, LLC, a Michigan for-profit company, and owners of said Michigan for-profit company, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

_____/

**BRIEF IN SUPPORT OF DEFENDANT AERO COMMUNICATIONS, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)**

# TABLE OF CONTENTS

INDEX OF AUTHORITIES........................................................................... ii

STATEMENT OF ISSUES PRESENTED............................................... iii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES........................... iv

INTRODUCTION .......................................................................................1

FACTS AS ALLEGED BY PLAINTIFFS..................................................2

    The Parties ...........................................................................................2

    Plaintiffs Were Hired by Piron and/or Reynolds Quality...............3

    Plaintiffs Were Trained by Piron and/or Reynolds Quality ...........5

    Plaintiffs' Work Was Directed and Controlled By Piron and/or
    Reynolds Quality .................................................................................5

    Plaintiffs' Wages Were Set and Paid by Piron and/or Reynolds
    Quality ..................................................................................................7

STANDARD OF REVIEW ........................................................................8

ARGUMENT ..............................................................................................9

    I.     PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO
            ESTABLISH THAT AERO WAS THEIR "JOINT
            EMPLOYER"......................................................................9

CONCLUSION ..........................................................................................19

215812904.3 48372/314974

# INDEX OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)........................................................................8

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)......................................................................8, 9

*Carrier Corp. v. NLRB,*
    768 F.2d 778 (6th Cir. 1985) .......................................................10

*Crosby v. Cox Communs., Inc.,*
    2017 U.S. Dist. LEXIS 65951 (E.D. La. May 1, 2017) ...................... passim

*Directv, Inc. v. Treesh,*
    487 F.3d 471 (6th Cir. 2007) ..........................................................9

*Dole v. Elliott Travel & Tours, Inc.,*
    942 F.2d 962 (6th Cir. 1991) .......................................................10

*Hebron v. DIRECTV,*
    2015 U.S. Dist. Lexis 142077 (N.D. Ill. October 13, 2015) ...... 14, 15, 16, 19

*Jacobson v. Comcast Corp.,*
    740 F. Supp. 2d 683 (D. Md. 2010)................................................ 12, 14, 15

*Thornton v. Charter Communs., LLC,*
    2014 U.S. Dist. LEXIS 135523, (E.D. Mo. Sept. 25, 2014) ........................14

*United Stated Dept. of Labor v. Cole Enter., Inc.,*
    62 F.3d 775 (6th Cir. 1995) .......................................................10

*Zampos v. W&E Communs.,*
    970 F. Supp. 2d 794 (N.D. Ill. 2013).................................................... passim

## Statutes

29 U.S.C. § 206(g) .......................................................................9

## Rules

Fed. R. Civ. P. 12(b)(6)............................................................1, 8

## <u>STATEMENT OF ISSUES PRESENTED</u>

I.      WHETHER PLAINTIFFS' CLAIMS AGAINST AERO SHOULD BE DISMISSED WHERE PLAINTIFFS FAIL TO ALLEGE FACTS SUFFICENT TO ESTABLISH AERO WAS THEIR JOINT EMPLOYER UNDER THE FLSA BECAUSE PLAINTIFFS' MINIMAL ALLEGATIONS DO NOT ESTABLISH AERO HAD AUTHORITY TO HIRE OR FIRE THEM, DIRECTED OR CONTROLLED SIGINIFICANT ASPECTS OF THEIR DAY-TO-DAY WORK, OR SET OR PAID THEIR COMPENSATION?

215812904.3 48372/314974

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

*Crosby v. Cox Communs., Inc.*, 2017 U.S. Dist. LEXIS 65951 (E.D. La. May 1, 2017)

*Hebron v. DIRECTV*, 2015 U.S. Dist. Lexis 142077 (N.D. Ill. October 13, 2015)

*Jacobson v. Comcast Corp.*, 740 F. Supp. 2d 683 (D. Md. 2010)

*Thornton v. Charter Communs., LLC*, 2014 U.S. Dist. LEXIS 135523, (E.D. Mo. Sept. 25, 2014)

*Zampos v. W&E Communs.*, 970 F. Supp. 2d 794 (N.D. Ill. 2013)

iv

## **INTRODUCTION**

Plaintiffs are former cable technicians who were employed by Defendants Reynolds Quality Installations, LLC ("Reynolds Quality") and/or Piron, LLC ("Piron") from March 2016 to June 2016.  Plaintiffs' Complaint asserts they were improperly classified as independent contractors and/or not paid minimum wages and overtime compensation in violation of the Fair Labor Standards Act ("FLSA").

Every substantive allegation in the Complaint regarding Plaintiffs' employment relates to people, events, and actions that took place at or with Reynolds Quality or Piron.  Plaintiffs admit they applied for employment and were hired by Reynolds Quality and Piron, were trained by Reynolds Quality and Piron, were supervised by Reynolds Quality and Piron, and had their wages set and paid by Reynolds Quality and Piron.

Despite these admissions, Plaintiffs argue that Aero Communications, Inc. ("Aero") should also be held liable for the alleged FLSA violations because Aero was their joint employer.  This claim is based exclusively on the fact that Aero subcontracted cable installation and repair services to Piron.

Applying the economic realities test adopted by the Sixth Circuit when analyzing whether Aero is an "employer" under the FLSA, Plaintiffs fail to allege any facts that establish joint employment vis-à-vis Aero.  In fact, the 184-paragraph Complaint and four detailed affidavits attached to the Complaint make

1

just three factual allegations as to Aero.  Plaintiffs allege: (1) they obtained equipment from Aero's warehouse, (2) their technician badge displayed Aero's logo, and (3) after completing a job they entered it into Aero's mobile billing software.  Courts have repeatedly held in nearly identical factual scenarios that this type of minimal and unremarkable activity is insufficient to establish joint employer liability under the FLSA as a matter of law.

None of these allegations establish that Aero had authority to hire or fire Plaintiffs.  Nor do they show that Aero exerted any control over Plaintiffs' day-to-day work, including setting their schedules or directing their work. These allegations also do not show that Aero set Plaintiffs' compensation or paid them.

Plaintiffs fail to state a claim against Aero.  Plaintiffs' Complaint as to Aero should be dismissed.

## FACTS AS ALLEGED BY PLAINTIFFS

### THE PARTIES

Comcast is one of the nation's largest video, high-speed internet and phone providers to residential customers.  [Complaint ¶ 14].  So that it can effectively provide these products to its customers, Comcast contracts with Aero to provide cable installations and repair services.  [Complaint ¶ 30].

In order to meet Comcast's business demands and contractual requirements, Aero sometimes contracts with other cable installation and repair service

2

companies to assist in performance of the work. [Complaint ¶¶ 30-31]. For example, Aero subcontracts cable technician services to Defendant Piron, which is owned and operated by Defendant Steve Hannah ("Hannah"). [Complaint ¶¶ 25, 26]. According to Plaintiffs, Defendant Craig Monroe ("Monroe") is a corporate officer of Piron. [Complaint ¶ 38].

For several months in 2016, Piron subcontracted some of its work for Aero to Reynolds Quality, a cable technician services company owned and operated by Defendant Roderick Reynolds, Jr. ("Reynolds"). [Complaint ¶¶ 27-28]. Plaintiffs do not allege Reynolds Quality provided cable technicians directly to Aero, that Aero had any knowledge Reynolds Quality was providing workers to Piron, or that Aero otherwise assented to Piron subcontracting this cable installation work to Reynolds Quality.

Plaintiffs worked for Reynolds Quality and/or Piron as cable technicians and were provided by Piron to Aero to provide cable installation and repair services to Comcast's customers. [Complaint ¶ 29-31].

**PLAINTIFFS WERE HIRED BY PIRON AND/OR REYNOLDS QUALITY**

In early 2016, Plaintiff Suhail Ali learned about available cable installation work at Piron from Monroe. [Complaint Ex D ¶ 2]. Ali told his friends, Plaintiffs Shalan Almansoob, Qasem Saleh and Kassem Dabashi about the work opportunity, after which they all applied for cable technician jobs. [Complaint, Ex D ¶ 2].

215812904.3 48372/314974

Plaintiffs allege that they completed Piron employment applications that contained a Piron logo.  [*Id.*].

In March 2016, Plaintiffs submitted their employment applications and were interviewed by a Piron employee, Tod Debeaux. [Complaint, Ex D ¶ 3].  After successfully completing a Comcast-required background check and drug test, Debeaux provided Plaintiffs with new-hire paperwork.  [Complaint, Ex D ¶ 3, 11; Ex E ¶ 2, Ex F ¶ 1].  All of the new-hire paperwork related to Piron.  [Complaint, Ex D ¶ 9; Ex I].  Plaintiffs were also issued a "Piron, LLC, Handbook", which contained employment policies applicable to "all Piron Technicians."  [Complaint ¶¶ 41, 53; Ex I].  The policies detail Piron's expectations of its technicians with respect to attendance, conduct, dress, and other areas of employment.  [Complaint, Ex I].

Based on representations made to them and their experiences during the application and onboarding process, Plaintiffs believed they were employees of Piron.  [Complaint, Ex D ¶ 7; Ex E ¶ 8].  They were later told that they were actually employed by Reynolds Quality.  [Complaint, Ex D ¶ 14].

Plaintiffs' Complaint does not allege that at any time during the application or onboarding process they were advised that they were employed by Aero.  Nor do Plaintiffs allege that Aero had any input or influence as to which applicants Piron or Reynolds Quality should hire.

4

### PLAINTIFFS WERE TRAINED BY PIRON AND/OR REYNOLDS QUALITY

For the first three to five weeks of their employment, Plaintiffs participated in a mandatory on-the-job training program. [Complaint, Ex D ¶ 4; Ex F ¶ 6]. The training was facilitated by Reynolds Quality and conducted by trainers/technicians who worked for Piron and/or were friends of Roderick Reynolds. [Complaint, Ex D ¶ 4; Ex F ¶ 5; Ex G ¶ 5]. As part of the training process, Plaintiffs "were required to ride along with their [Piron and Reynolds Quality] trainers and learn through observation in the field." [Complaint ¶ 43].

Plaintiffs do not allege that Aero participated in, directed or controlled their cable technician training.

### PLAINTIFFS' WORK WAS DIRECTED AND CONTROLLED BY PIRON AND/OR REYNOLDS QUALITY

After Plaintiffs completed training, they were issued a technician badge that permitted them to perform work on their own. [Complaint ¶ 45; Ex D ¶ 11]. The badge displays Comcast's and Aero's logos. [Complaint, Ex D ¶ 11; Ex F ¶ 1].

Plaintiffs began their work day by driving to Aero's warehouse to pick up their equipment. [Complaint ¶ 49; Ex D ¶ 6; Ex E ¶ 5]. From the warehouse, they traveled to their various work assignments, which were assigned through Comcast's web-based application called TechNet. [Complaint ¶46; Ex E ¶ 7; Ex F ¶ 8]. At the end of the day, Plaintiffs returned to Aero's warehouse to drop off their equipment. [Complaint, Ex D ¶ 6; Ex F ¶ 7]. Plaintiffs do not allege that

5

they had any substantive interactions with anyone at Aero while picking up and dropping off their equipment. Nor do they allege that anyone at Aero directed their day-to-day job assignments.

Once they were on the job, Plaintiffs were supervised remotely by Roderick Reynolds, Craig Monroe, Steve Hannah and Gerald Ford. [Complaint, Ex F ¶ 14]. These individuals are all employed by Piron or Reynolds Quality. [Complaint ¶¶ 25-28, 38; Ex E ¶10; Ex F ¶ 14]. None of these individuals are employed by Aero.

According to Plaintiffs, Monroe and Reynolds monitored their performance throughout the day using TechNet and/or FIP Mobile, Aero's billing software. [Ex F ¶ 9; Complaint ¶ 52]. If Plaintiffs were not moving at a pace that Monroe and Reynolds thought was satisfactory, Plaintiffs would be reprimanded and/or issued a disciplinary write up. [Complaint ¶ 52]. Likewise, if Monroe or Reynolds determined that Plaintiffs were not meeting Comcast's quality standards, they told Plaintiffs that they could be disciplined or terminated. [Complaint ¶ 38; Ex F ¶ 14; Ex G ¶ 14]. Plaintiffs do not allege that Aero had the ability to discipline or influence any decision with respect to their discipline.

According to Plaintiff Ali, if he encountered technical problems during an installation, he first contacted Monroe or Reynolds. [Complaint, Ex D ¶ 12]. If Monroe or Reynolds could not resolve the issue, they directed him to "figure it out. Call Comcast if you can't figure it out." [Complaint, Ex D ¶ 12; Complaint ¶ 51].

6

For this reason, Plaintiffs regularly contacted Comcast's Tech Support or Work Flow Department for assistance.  [Complaint, Ex D ¶ 12-13].

Once a job was complete on TechNet, Plaintiffs billed for the job using Aero's FIP Mobile billing software.  [Complaint ¶ 48; Ex F ¶ 17].

## PLAINTIFFS' WAGES WERE SET AND PAID BY PIRON AND/OR REYNOLDS QUALITY

During Plaintiffs' employment, Piron and Reynolds Quality made multiple different representations to Plaintiffs regarding the amount they would be paid. [Complaint ¶ 44; Ex D ¶ 5; Ex E ¶ 3; Ex F ¶¶ 6, 13-14; Ex G ¶ 6].  According to Plaintiffs, they were not paid as promised, and sometimes were not paid at all. [Complaint ¶¶ 46, 54].  When Plaintiffs were paid, payment was made by either Piron or Reynolds.  [Complaint ¶ 54; Ex E ¶¶ 3, 8-10; Ex H].  Specifically:

- Plaintiff Ali stated that he received cash payments from Monroe and one paycheck from Piron. [Complaint, Ex D ¶ 7].

- Plaintiff Almonoob stated that he received two paychecks from Reynolds Quality and two cash payments from Monroe. [Complaint, Ex E ¶¶ 3, 8].

- Plaintiff Saleh stated that he was paid only in personal checks by Reynolds. [Complaint, Ex F ¶ 16].

- Plaintiff Dubaishi stated that he was paid in personal checks by Reynolds. [Complaint, Ex G ¶¶ 6, 16].

7

Plaintiffs do not allege that they were paid by Aero, or that the terms of their compensation arrangement with Piron and/or Reynolds Quality were dictated by Aero. Nor do Plaintiffs allege Aero ever made promises concerning their wages, or had any knowledge that they were not being properly compensated.

According to Plaintiffs, they complained about the alleged improper payment to their supervisors at Piron and Reynolds Quality. [Complaint ¶¶ 54-55; Ex D ¶ 8, 14; Ex E ¶ 11; Ex F ¶ 18; Ex G ¶ 16]. However, their complaints were not resolved. [Complaint ¶ 55]. As a result, Plaintiffs quit their employment in June 2016. [Ex D ¶ 15; Ex G ¶ 19].

## STANDARD OF REVIEW

A motion to dismiss pursuant to Federal Rule 12(b)(6) tests whether a legally sufficient claim has been pled in the complaint, and provides for dismissal when a plaintiff fails to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). For the purposes of a motion to dismiss, the court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss,

nor are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" sufficient. *Id.*

A complaint may survive a motion to dismiss only if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570); *see also Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

## I. PLAINTIFFS' ALLEGATIONS ARE INSUFFICIENT TO ESTABLISH THAT AERO WAS THEIR "JOINT EMPLOYER"

The FLSA defines an employer as one that "suffers or permits" an individual to work. 29 U.S.C. § 206(g). To determine whether an entity is an employer for purposes of the FLSA, courts consider the "economic reality" of the situation, which includes the following factors:

(1) the power to hire and fire employees;

(2) control over significant aspects of the employee's day-to-day functions;

(3) the ability to set the hours and work schedules for the entity's employees; and

(4) the power to determine salaries for the corporation's employees.

9

*See e.g., United Stated Dept. of Labor v. Cole Enter., Inc.,* 62 F.3d 775, 778 (6th Cir. 1995); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962 (6th Cir. 1991); *Carrier Corp. v. NLRB*, 768 F.2d 778, 781 (6th Cir. 1985).

The allegations in Plaintiffs' Complaint do not satisfy this test.  Plaintiffs do not allege that any employee of Aero had authority to hire or fire them.  Nor do Plaintiffs allege that Aero paid them or set their wages and benefits.  Plaintiffs also have not alleged any facts that Aero supervised and controlled any significant aspect of their day-to-day functions, including the ability to set their work schedules.  Plaintiffs have failed to state a claim against Aero.  Plaintiffs' Complaint as to Aero should be dismissed.

### A.    Plaintiffs Do Not Allege Aero Had Power to Hire and Fire Them

Plaintiffs do not assert that Aero played any role in hiring them.  To the contrary, Plaintiffs admit they were recruited, interviewed and selected for employment by individuals employed by Piron. [Complaint, Ex D ¶ 2, 3, 11].  After they were hired, they were on-boarded by individuals employed by Piron and provided with Piron's hiring paperwork.  [Complaint, Ex D ¶¶ 2, 3, 11].  Plaintiffs do not allege Aero played any role in the application or onboarding process.

The same is true with respect to termination.  Plaintiffs do not allege Aero terminated them, or directed that they be terminated.  Nor do Plaintiffs claim that Aero had any actual authority to terminate their employment.

10

At most, Plaintiffs allege that Aero passed on Comcast's background check and drug test requirements and quality control standards to Piron. However, courts have repeatedly held that these types of minimal activities are insufficient to establish hiring or firing authority for the purposes of joint employment under the FLSA as a matter of law.

In *Zampos v. W&E Communs.,* 970 F. Supp. 2d 794 (N.D. Ill. 2013), the plaintiffs were cable technicians employed by a subcontractor to provide cable installation and repair services to Comcast. In arguing that Comcast jointly employed them, the plaintiffs made the identical arguments Plaintiffs make here - that Comcast required technicians to pass a background check and drug test before performing work for its customers and retained authority to de-badge a technician who did not meet its standards. The court found these allegations insufficient to establish hiring and firing authority as a matter of law, explaining:

> Plaintiffs first argue that Comcast plays a role in hiring W&E technicians to the extent it requires W&E to perform background and drug testing on all technicians. Plaintiffs further argue that Comcast has the authority to terminate technicians; and, exercises that authority by making recommendations to de-badge W&E technicians. **To the extent Comcast plays a role in the hiring and firing process, it is only in the context of quality control, safety, and security of Comcast's customers**, whereas W&E hires the applicant of its choice without input from Comcast (provided that the W&E applicant passes the background and drug tests); and, fires technicians for, inter alia, insubordination, refusal to work, habitual tardiness, and absenteeism. Additionally,

11

there is no evidence to suggest that W&E first contacts Comcast for permission before terminating W&E technicians. **Thus, this purported control, relating to the safety and security of Comcast customers, is qualitatively different from the control exercised by an employer**. *Id.* at 803 (emphasis added).

The same result was reached by the court in *Jacobson v. Comcast Corp.,* 740 F. Supp. 2d 683, 689 (D. Md. 2010). In *Jacobson*, the plaintiffs were employed as cable technicians by companies that contracted with Comcast to install cable services for Comcast customers. The plaintiffs claimed that Comcast was their joint employer because it set certain background and quality performance standards for technicians that performed work for its customers. The court found these allegations did not establish hiring and firing authority for the purposes of joint employment under the FLSA as a matter of law. The court explained:

> **Installation Companies are free to hire anyone they choose to hire, provided that the applicants do not have a criminal record or fail a drug test. Likewise, an Installation Company has full authority** to maintain the employment of the technicians, provided that a technician meets Comcast's quality performance standards, and **to fire any technician that it believes should be fired, even** if the technician meets Comcast's quality control standards. *Id.* at 689-690 (emphasis added).

A similar conclusion was recently reached in *Crosby v. Cox Communs., Inc.,* 2017 U.S. Dist. LEXIS 65951 (E.D. La. May 1, 2017), a case which involved a similar subcontracting relationship as is present here. In *Crosby,* Cox

12

Communications contracted with an installation company to install its equipment, which in turn subcontracted the work to a second installation company. The plaintiffs alleged that Cox Communications was their joint employer for the purposes of the FLSA, in part because Cox required their direct employer(s) to subject their personnel to background checks and drug tests before performing work for Cox. The court rejected this argument, based on the economic reality of the situation:

> Cox has no authority to hire or fire Superior technicians. **The contractual requirements cited by the Plaintiffs do not amount to direct or even indirect power or control over hiring and firing**. For example, Cox requires that Superior maintain adequate, qualified, experienced, and professional-appearing personnel and that technicians must pass a background check before Cox will permit them to enter a Cox customer home. As this Court has previously found, **these specifications amount to minimal quality controls and safety measures. They do not indicate that Cox dictates which applicants are hired or how many**. The Plaintiffs have not presented any evidence to contest the declaration of Cox's representative that Cox has no involvement or input in Superior's hiring or firing decisions. **Each of the Plaintiffs agreed in deposition that they did not apply to Cox for employment**. The Plaintiffs point to the [contract's] requirement that Superior personnel be subjected to background checks before performing work for Cox's customers. But **simply requiring a background check has not been found sufficient to conclude that a communication company possesses authority to hire and fire**.

*      *      *

> [Further,] the ability to de-authorize a technician does not, on its own, amount to the authority to fire.  As the *Thornton* court explained, the ability to de-authorize a technician "was to ensure customer safety and quality of service" and did "not evidence a joint employer relationship." …. *Id.* at \*15-16 *citing Thornton v. Charter Communs., LLC,* 2014 U.S. Dist. LEXIS 135523, (E.D. Mo. Sept. 25, 2014) (emphasis added).[1]

Also instructive is *Hebron v. DIRECTV*, 2015 U.S. Dist. Lexis 142077 (N.D. Ill. October 13, 2015).   In *Hebron*, the court granted DIRECTV's motion to dismiss pursuant to Rule 12(b)(6), finding that the satellite television installation technicians failed to allege sufficient facts to show DIRECTV was their joint employer.   With regard to the authority to hire and fire technicians, the Court stated, "[a]llegations that DIRECTV set certain standards and qualifications for technicians' performance does not equate to hiring…." *Id.* at \*11.

The same result must be reached here. Plaintiffs do not allege that Aero played any role in hiring them, or in their separation of employment. At best, Plaintiffs' sole claim is that Aero communicated Comcast's background check and

---

[1] While *Zampos*, *Crosby*, and *Jacobson* were decided in the context of motions for summary judgment, the facts and procedural history in those cases is distinguishable.  First, the defendants in *Zampos* and *Jacobson* did not file a motion to dismiss on the pleadings, so the courts did not have an opportunity to rule on the issue of joint employment at that procedural stage.  Second, while Cox Communications did file a Rule 12(b)(6) motion in *Crosby*, the motion was denied because the plaintiffs had specifically alleged that Cox intentionally set up bogus, judgment-proof entities as independent contractors in an attempt to circumvent the provisions of the FLSA, which, if true, would establish liability.   No such allegation is made by Plaintiffs in their 184-paragraph Complaint.  Nor could such an allegation be made in this case.

14

quality standards to Piron.  As the courts held in *Zampos*, *Jacobson*, *Crosby*, and *Hebron*, even assuming these allegations are true, they are insufficient to establish joint employer liability against Aero as a matter of law.

### B.   Plaintiffs Do Not Allege Aero Determined Their Compensation and Benefits

Plaintiffs do not allege that Aero made any promises to them regarding their pay and benefits, or that Aero actually paid them.  To the contrary, Plaintiffs admit their pay was solely determined and made by Piron or Reynolds.

The fact that Aero paid Piron for work performed pursuant to their contractual relationship is of no legal consequence.  Courts have repeatedly held that contractual payment terms are insufficient to weigh in favor of a joint employment relationship, where, as here, there are no other indicators that the alleged joint employer determined the rate, manner or method of payment for job performance.

The well-reasoned holding in *Jacobson*, is instructive.  In *Jacobson*, the court rejected the plaintiffs' argument that Comcast controlled their wages simply because it paid the Installation Companies on a per service basis, which in turn paid the plaintiffs on a per service basis.  The court made the commonsense observation that "[a]n employee's income, received from its direct employer, will always be *determined and influenced* by what a contractor decides to pay the direct employer for services rendered by the employee."   740 F. Supp. 2d at 692.

15

However, "[t]o find that this arrangement places Comcast in control of Plaintiffs' wages would dramatically expand the FLSA to subsume traditional independent contractor relationships." *Id.*

The *Crosby* court reached a similar conclusion, finding that the payment obligations under the contract between Cox Communications and its subcontractors were commonplace and did not establish control over the cable technicians' wages. 2017 U.S. Dist. Lexis. 65951 at *23-24. As the court noted, "there is no evidence Cox dictated any particular rate or pay structure to any contractor. Further, there is no evidence that payments to technicians were contingent on receiving payment from Cox. The payment factor weighs against finding joint employment." *Id.* at *24.

The same result was reached in *Zampos*. There, the court rejected the plaintiffs' argument that Comcast played a significant role in determining how much its subcontractors' technicians were paid because it pays its subcontractors on a per service basis, itemized how long work tasks should take, and associated point value and hourly rates for each job. 970 F. Supp. 2d at 804. The court noted it was the subcontractor that determined what hourly rate to pay the plaintiffs, whether to pay them on a salary basis, whether to pay them bonuses, and other payment terms. Comcast played no role in these decisions. *Id. See also Hebron v. DIRECTV*, 2015 U.S. Dist. Lexis 142077at *11 (N.D. Ill. October 13,

16

2015)(finding no joint employment relationship and granting Rule 12(b)(6) motion where DIRECTV did not determine the rate or method of the technician-plaintiffs' compensation).

The facts alleged by Plaintiffs in this case dictate the same conclusion. Plaintiffs have not alleged that Aero determined their rate of pay, method of compensation, or that it actually paid them.  This factor weighs against a determination that Aero was Plaintiffs' joint employer and should result in a finding that Plaintiffs have failed to state a claim under the FLSA against Aero.

### C.   Plaintiffs Do Not Allege That Aero Supervised and Controlled the Conditions of Their Employment or Set Their Schedules

Plaintiffs allege that they received their work assignments each day electronically through TechNet.  [Complaint ¶46; Ex E ¶ 7; Ex F ¶ 8].  On the job, Plaintiffs were supervised by Roderick Reynolds, Craig Monroe, Steve Hannah and/or Gerald Ford, all of whom are all employed by Piron or Reynolds Quality. [Complaint, Ex F ¶ 14].  According to Plaintiffs, Monroe and Reynolds monitored their performance throughout the day.  [Ex F ¶ 9; Complaint ¶ 52].  If they were not satisfied with Plaintiffs' performance, Monroe and Reynolds told Plaintiffs they would be reprimanded or issued a disciplinary write up.  [Complaint ¶ 52].

Plaintiffs do not allege that Aero trained them, set their schedule, directed their work, disciplined them, or otherwise controlled any aspect of their day-to-day work.  Instead, Plaintiffs' allegations related to Aero are only that: (i) they obtained

17

equipment from Aero's warehouse, (ii) they had a badge with Aero's logo, and (iii) they used Aero's billing software to enter their jobs. As a matter of law, these diminutive allegations are insufficient to establish joint employment.

In *Zampos*, Comcast exercised significantly more control and direction over its subcontractor's technicians' work than Aero is alleged to exert in this case. However, the court held that the plaintiffs failed to establish a joint employment relationship between Comcast and the subcontractor as a matter of law. The court noted that it was the *subcontractor* that set the technicians' work schedules, managed attendance and scheduling, and established the technicians' reporting requirements. 970 F. Supp. 2d at 803. While the court noted the technicians necessarily had some contact with Comcast and its customers, such contact was to be expected and was not enough to establish control over the technicians' work for the purposes of joint employment. *Id.* As the court explained "[there is a] difference between affecting work performance as opposed to exercising supervision or control." *Id.*

In *Crosby*, the court reached a similar result. In finding that Cox Communications was not the plaintiffs' joint employer, the court noted that "Cox does not supervise or control the work schedules or conditions of employment of [the] technicians." 2017 U.S. Dist. Lexis. 65951 at *18-19. The court also noted that each of the plaintiffs admitted they were supervised by its subcontractor's

18

personnel, not by Cox employees. *Id.* at *19.  The court gave no credit to the fact that the technicians' uniforms displayed Cox's logo, finding that this was "merely a safety measure to ensure that Cox customers know that the appropriate person is entering their home." *Id.* at * 20-21.

Finally, in *Hebron*, the court held that the plaintiffs failed to allege sufficient facts to show that DIRECTV exercised supervision and control where, "quality-control requirements do not equate to supervision and control by an employer. [Further], [t]hat DIRECTV issued work orders to technicians is not the same as controlling the schedule of employees." *Id.* at *11.

The same result must be reached here.  Plaintiffs' three factual allegations relating to Aero are woefully insufficient to show that Aero directed and controlled their work for the purposes of establishing joint employment under the FLSA. Because Plaintiffs have failed to state a claim for joint employment, their Complaint as to Aero must be dismissed.  See, e.g., *Hebron v. DIRECTV*, 2015 U.S. Dist. Lexis 142077 (N.D. Ill. October 13, 2015)(granting motion to dismiss for failure to state a claim under a joint employment theory).

## <u>CONCLUSION</u>

Defendant Aero Communications, Inc. respectfully requests that this Court enter an order dismissing all Plaintiffs' claims against Aero Communications, Inc.

215812904.3 48372/314974

Respectfully submitted,

CLARK HILL PLC

By:   s/ Ellen E. Hoeppner
        Daniel J. Bretz (P34334)
        Ellen E. Hoeppner (P73831)
        500 Woodward Avenue, Suite 3500
        Detroit, MI  48226
        (313) 965-8300
        Attorneys for Defendant Aero
        dbretz@clarkhill.com
May 26, 2017        ehoeppner@clarkhill.com

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing document was served upon all parties and/or attorneys of record to the above cause herein at their respective addresses as disclosed on the pleadings on May 26, 2017, via:

_____ U.S. Mail                  _____ Facsimile

___X___ ECF Filing                 _____ Hand Delivery

_____ E-Mail                     _____ Federal Express

                          s/ Ellen E. Hoeppner
                          Ellen E. Hoeppner (P73831)

20