UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUHAIL ALI, SHALAN ALMANSOOB,
QASEM SALEH, and KASSEM DUBAISHI,
on behalf of themselves and all other persons
similarly situated,

             Plaintiffs,

v.

                                   Civil Case No. 17-cv-11012
                                   Honorable Linda V. Parker

PIRON, LLC, STEVE HANNAH,
CRAIG MONROE, REYNOLDS
QUALITY INSTALLATIONS, LLC,
RODERICK REYNOLDS JR.,
AERO COMMUNICATIONS, INC. and
COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC,

             Defendants.
_____/

## OPINION AND ORDER DENYING DEFENDANT AERO COMMUNICATIONS, INC.'S MOTION TO DISMISS (ECF NO. 13)

Plaintiffs[1] Suhail Ali, Shalan Almansoob, Qasem Saleh, and Kassem Dubaishi (collectively "Plaintiffs") filed this putative class action lawsuit against Defendants (1) Piron, LLC, (2) Steve Hannah, (3) Craig Monroe, (4) Reynolds Quality Installations, LLC, (5) Roderick Reynolds Jr., (6) Aero Communications, Inc., and (7) Comcast Cable Communications Management, LLC (collectively

---

[1] Larry Davis is listed as a Plaintiff. However, he is not listed on the Complaint, and there is no record of an amended complaint.

"Defendants") on March 30, 2017, alleging minimum wage and overtime wage violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*. Plaintiffs allege that Defendants are joint employers who misclassified Plaintiffs as independent contractors in order to circumvent the protections of FLSA. Presently before the Court is Aero Communications, LLC's ("Aero") Motion to Dismiss, filed May 26, 2017. (ECF No. 13.) Plaintiff filed a response on June 15, 2017, and Aero filed a reply on June 29, 2017. (ECF Nos. 19 & 21.) For the reasons set out below, the Court denies Aero's motion.

## I.     Factual and Procedural History

Comcast Cable Communications Management, LLC ("Comcast") is a global media and technology provider of video, high-speed Internet, and phone services. (ECF No. 1 at Pg ID 4.) To expand its services and enlarge its Michigan customer base, Comcast subcontracted its cable installation and repair services to Aero. (*Id*. at Pg ID 9.) To meet Comcast's business demands, Aero contracted with Piron, LLC ("Piron"), owned and operated by Steve Hannah ("Hannah"), and Reynolds Quality Installations, LLC ("Reynolds Quality"), which is owned and operated by Roderick Reynolds Jr. ("Reynolds), who provided cable technicians for Comcast's repair and installation services. (*Id*. at Pg ID 9.)

Plaintiffs learned of the cable technician positions from Craig Monroe ("Monroe"), one of Piron's corporate officers, and submitted applications for

employment. (Shuhail Ali Decl.², at ¶ 2, ECF No. 1-5.) A Piron employee, Tod Debeaux, interviewed Plaintiffs for the positions. (Ali Decl., at ¶ 3, ECF No. 1-5.) Plaintiffs stated Comcast required them to complete and pass a background check before they could begin work. (Shalan Almansoob Decl., at ¶ 2, ECF No. 1-6; Qasem Saleh Decl., at ¶ 1, ECF No. 1-7; Kassem Dubaishi Decl., at ¶ 1, ECF No. 1-8.) Upon completing and passing Comcast's background check, Plaintiffs received badges with Comcast's and Aero's logos and were given Piron's employee handbook. (ECF No. 1 at Pg ID 11; Ali Decl., at ¶ 11, ECF No. 1-5; Almansoob Decl., at ¶ 5, ECF No. 1-6; Saleh Decl., at ¶ 1, ECF No. 1-7; Dubaishi Decl., at ¶ 1, ECF No. 1-8.) Plaintiffs allege they wore uniforms that were subject to Comcast's standards. (ECF No. 1 at Pg ID 15.)

Because Aero provided the cable technician equipment, each workday, Plaintiffs were required to report to Aero's warehouse before responding to any service requests. (ECF No. 1 at Pg ID 14.) Plaintiffs returned to Aero's warehouse at the conclusion of the workday to return the equipment. (*Id.*) Comcast assigned the service jobs and work routes through a Comcast application, TechNet, which directed Plaintiffs to the work locations and type of service needed. (*Id.* at Pg ID 13.) After completing service requests, Plaintiffs charged the customers using Aero's billing software, FIP Mobile. (*Id.*)

---

² Although Plaintiffs filed amended declarations on July 24, 2017, as they related to Aero, the amended declarations were consistent with the original declarations.

In the field, Monroe and Reynolds monitored Plaintiffs. (*Id.* at Pg ID 15; Saleh Decl., at ¶ 9, ECF No. 1-7; Dubaishi Decl., at ¶ 9, ECF No. 1-8.) If any technical difficulties arose during the job assignment, Plaintiffs first contacted their supervisors, Monroe and Reynolds, and then Comcast's Tech Support Center. (*Id.* at Pg ID 15; *see also* Ali Decl., at ¶ 12, ECF No. 1-5.) Monroe and Reynolds were responsible for disciplining Plaintiffs as well. (ECF No. 1 at Pg ID 15.)

According to Plaintiffs, both Piron and Reynold's Quality paid them. (ECF No. 1 at Pg ID 9.) Plaintiffs allege the pay was inconsistent and varied in the form of cash, personal checks and money orders. (ECF No. 1 at Pg ID 15.) Plaintiffs stated that they never received time records and were charged for unsatisfactory services, including charges for faulty equipment and unhappy customers. (*Id.* at Pg ID 16.) Plaintiffs allege they worked twelve-hour shifts six days a week but were not paid minimum wage and did not receive overtime wages. (*Id.* at Pg ID 11.)

Plaintiffs eventually ended their employment with Defendants and initiated this putative class action lawsuit on March 30, 2017. Plaintiffs allege Defendants are joint employers who misclassified Plaintiffs as independent contractors. (ECF No. 1 at Pg ID 2.) According to Plaintiffs, Defendants owe Plaintiffs minimum wage and overtime wage benefits for willfully violating FLSA. (*Id.* at Pg ID 16-17.) In response to Plaintiffs' Complaint, on May 26, 2017, Aero filed a motion to

dismiss, alleging Plaintiffs failed to allege sufficient facts establishing that Aero was a joint employer pursuant to FLSA.  (ECF No. 13.)

On May 9, 2017, Plaintiffs filed a motion for conditional class certification, which remains pending before the Court.  (ECF No. 4.)  On September 28, 2017 and October 9, 2017, the summons for Reynolds Installations and Reynolds was returned unexecuted.  (ECF Nos. 42, 43, & 45.)  On October 12, 2017, the clerk entered default against Monroe for failing to respond to the Complaint.  (ECF No. 47.)  On October 27, 2017, Plaintiffs requested the Court reserve on default judgment against Monroe until damages are proven.  (ECF No. 51.)

## II.   Standard of Review

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).  Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court must accept the factual allegations in the complaint as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This presumption, however, is not applicable to legal conclusions. *Iqbal*, 556 U.S. at 668. Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555).

## III. Applicable Law & Analysis

FLSA prohibits employers from paying employees less than the federal minimum wage. *See* 29 U.S.C. § 206. FLSA also prohibits employers from permitting employees to work more than forty hours in any workweek without compensation at a rate "not less than one and one-half times the regular rate at

6

which he is employed." 29 U.S.C. § 207(a)(1). Plaintiffs allege Aero violated FLSA when it failed to pay its employees minimum wage and overtime wage benefits. In response, Aero argues that Plaintiffs have failed to allege that Aero is a joint employer, and is, therefore, not responsible under the Act. To support its position, Aero contends there are no allegations that it had the authority to hire or fire; pay or set wages or benefits; supervise or control any aspect of Plaintiffs' workday functions; or set hours or work schedules. *See United States Dep't of Labor v. Cole Enter., Inc.*, 62 F.3d 775, 778 (6th Cir. 1995).

FLSA defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(e). Under FLSA, two or more entities can be joint employers and responsible for complying with the Act. *See* 29 C.F.R. § 791.2(a), the determination of which is dependent upon the factual circumstances of each case. *Id.* Whether a defendant is a joint employer is a question of law. *See Cole*, 62 F.3d at 778.

Because FLSA does not define "joint employer," the Court turns to the definition set out in 29 C.F.R. § 791.2(b):

> (b) Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
>
> > (1) Where there is an arrangement between the employers to share the employee's services, as, for example, to interchange employees; or

> (2) Where one employer is acting directly or indirectly in the interest of the other employer (or employers) in relation to the employee; or
>
> (3) Where the employers are not completely disassociated with respect to the employment of a particular employee and may be deemed to share control of the employee, directly or indirectly, by reason of the fact that one employer controls, is controlled by, or is under common control with the other employer.

Courts have adopted numerous multifactor tests for determining whether two or more entities are joint employers for the purposes of FLSA. *See Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 134-35 (4th Cir. 2017) (collecting cases). Aero relies on the factors set out in *Cole*, which, according to Aero, looks at whether the employer (1) has the power to hire and fire employees; (2) has control over significant aspects of the employee's day-to-day functions; (3) has the ability to set hours and work schedules; and (4) has power to determine salaries. *See Cole Enter.*, 62 F.3d at 778. The Court now turns to how the various multifactor tests have been applied.

In *Cole*, the Department of Labor sued Cole Enterprises d/b/a Echo Restaurant and William Cole, president and fifty percent shareholder of Cole Enterprises, for FLSA violations. The issue before the court was whether Cole was a joint employer. The Court looked at the economic reality of the individual, Cole, and Cole Enterprises. In making the determination, the Court assessed whether the "corporate officer": (1) has operational control over the enterprise; (2) has

8

significant ownership interest; (3) controls significant functions of the business; and (4) determines salaries and makes hiring decisions. *Id.* at 778. The Sixth Circuit affirmed the trial court's decision that Cole was an employer for purposes of FLSA.

In *Keeton*, the plaintiffs brought an action against Time Warner, Inc., Time Warner Cable, LLC, and former employees of Reno Services for violations of FLSA and the Ohio Fair Wage Standard Wage Act. *Keeton v. Time Warner Cable, Inc.*, No. 2:09-cv-1085, 2011 U.S. Dist. LEXIS 71472 (S.D. Ohio July 1, 2011). Reno Services was a cable installation service for Time Warner. The issues before the court were whether Reno Services and Time Warner were joint employers or the "economic realities" indicate plaintiffs were "employees" as opposed to independent contractors. *Id.* at *7. The *Keeton* court considered the following factors for assessing the joint employer issue: (1) the interrelation of operations between the companies; (2) common management; (3) centralized control of labor relations; and (4) common ownership. *Id.* at *8-9 (citing *Int'l Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk Southern Co.*, 927 F.2d 900, 902 (6th Cir. 1991)).

*Dowd* involved Plaintiffs who sued DirecTV and certain home service providers for FLSA violations. *Dowd v. DirecTv, LLC*, No. 14-cv-14018, 2016 U.S. Dist. LEXIS 36 (E.D. Mich. Jan. 4, 2016). The home service providers were

intermediaries that managed the satellite television technicians. In *Dowd*, the district court examined four factors for determining if defendants were joint employers: (1) power to hire and fire; (2) supervised controlled work schedules or conditions of employment; (3) determine the rate and method of payment; and (4) maintained employment records. *Id.* at *11-12 (citing *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465 (9th Cir. 1982) (recognizing the factors have been used by courts in various combinations). The court made clear that the factors were not exhaustive. *Id.*

More recently, the Fourth Circuit has formulated a joint employer test. Plaintiffs request that this Court adopt the *Salinas* joint employer test because it is most consistent with FLSA. In *Salinas*, J.I. General Contractors, Inc., owned by Juan and Isaias Flores Ramirez (collectively "the brothers"), employed the plaintiffs as drywall installers. Plaintiffs sued J.I. General Contractors, Inc. and the brothers for FLSA violations. The Fourth Circuit went through an extensive examination of FLSA and the Department of Labor's regulations implementing the Act. The Fourth Circuit identified six factors courts should consider to determine if two or more entities are joint employers:

> (1) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to direct, control, or supervise the worker, whether by direct or indirect means;
>
> (2) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly

or indirectly—hire or fire the worker or modify the terms or conditions of the worker's employment;

(3) The degree of permanency and duration of the relationship between the putative joint employers;

(4) Whether, through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is under common control with the other putative joint employer;

(5) Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and

(6) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.

*Id.* at 141-42. As other courts have done, the court in *Salinas* highlighted that the six factors were not exhaustive. Further, the court stated "[t]o the extent that facts not captured by these factors speak to the fundamental threshold question that must be resolved in every joint employment case—whether a purported joint employer shares or codetermines the essential terms and conditions of a worker's employment—court must consider those facts as well." *Id*. at 142.

It is clear that courts have applied many variations of the joint employer test. Although Aero argues that *Salinas* is inconsistent with Sixth Circuit precedent, the Court disagrees. The touchstone of many of the cases applying variations of the joint employer test is that the employment relationship is highly fact-dependent

11

and different factors may be appropriate under different factual scenarios. The Fourth Circuit is instructive as it relates to applying variations of the joint employer test: "absence of a single factor—or even a majority of factors is not determinative." *Hall v. DirecTv*, 848 F.3d 757, 770 (4th Cir. 2017). In short, the factors are not meant to be mechanical but applied based on the circumstances of the case. *Bonnete*, 704 F.2d at 1470 (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 730 (1947).

The Court is not inclined to follow the factors in *Cole* to the exclusion of other factors that may be relevant under the facts of this case. The Court takes this position mainly because *Cole* dealt exclusively with the relationship of a corporate officer in relation to an entity. However, the first, second and fourth factors in *Salinas* cover the factors discussed in *Cole* and advanced by Aero and are consistent throughout the many variations of the test. Moreover, the sixth factor in *Salinas* is highly relevant and would prove useful in assisting the Court in making its determination. As such, the Court will apply the *Salinas* joint employer test, which, again, covers the same factors discussed in *Cole*.

Plaintiffs have pleaded sufficient factual allegations for the Court to draw reasonable inferences that Aero was a joint employer. *See Iqbal*, 556 U.S. at 678. Contrary to Aero's position, Plaintiffs do not need to plead detailed factual allegations about Defendants' employment arrangements. Plaintiffs have

sufficiently alleged that Aero contracted with Reynolds Quality Installations and Piron for the cable installation and repair work. The Court can make a reasonable inference that through this arrangement, Aero indirectly controlled or supervised Plaintiffs. It is reasonable that Aero had the ability to control the terms and conditions of employment, especially in light of the requirement that Plaintiffs reported to Aero's warehouse at 7a.m. each workday and wore badges that contained Aero's logo. Also, Aero provided the tools Plaintiffs needed to perform their work.

Although it is unclear as to the degree of Aero's control, the Complaint allows the Court to make reasonable inferences that Aero was involved in the employment relationship with Plaintiffs and Defendants. The parties have not had the benefit of discovery to review documents, such as internal communications, disciplinary records, payroll and other documents that could shed light on the employment relationship between Aero and the other Defendants. Simply put, the Court finds the motion to dismiss premature. Because Plaintiffs have alleged sufficient facts to survive Aero's motion to dismiss, the motion is denied.

## IV.   Conclusion

Accordingly, Aero's motion to dismiss (ECF No. 13) is denied for the reasons stated above.

**IT IS ORDERED** that the motion (ECF No. 13) is **DENIED**;

**IT IS FURTHER ORDERED** that Defendant Aero shall file an Answer to Plaintiffs' Complaint, no later than fourteen (14) days from the date of this Order.

**IT IS SO ORDERED**.

s/ Linda V. Parker  
LINDA V. PARKER  
U.S. DISTRICT JUDGE

Dated: March 7, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, March 7, 2018, by electronic and/or U.S. First Class mail.

s/ R. Loury  
Case Manager
