UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUHAIL ALI, SHALAN ALMANSOOB,
QASEM SALEH, and KASSEM DUBAISHI,
on behalf of themselves and all other persons
similarly situated,

        Plaintiffs,

v.

        Civil Case No. 17-cv-11012
        Honorable Linda V. Parker

PIRON, LLC, STEVE HANNAH,
CRAIG MONROE, REYNOLDS
QUALITY INSTALLATIONS, LLC,
RODERICK REYNOLDS JR.,
AERO COMMUNICATIONS, INC. and
COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC,

        Defendants.
_____/

**OPINION AND ORDER GRANTING, IN PART, AND DENYING, IN PART, PLAINTIFFS' MOTION TO CERTIFY CLASS (ECF NO. 4)**

Plaintiffs[1] Suhail Ali, Shalan Almansoob, Qasem Saleh, and Kassem Dubaishi (collectively "Plaintiffs") filed this putative class action lawsuit against Defendants (1) Piron, LLC, (2) Steve Hannah, (3) Craig Monroe, (4) Reynolds Quality Installations, LLC, (5) Roderick Reynolds Jr., (6) Aero Communications, Inc., and (7) Comcast Cable Communications Management, LLC (collectively

---

[1] Larry Davis is listed as a Plaintiff. However, he is not listed on the Complaint, and there is no record of an amended complaint.

"Defendants") on March 30, 2017, alleging minimum wage and overtime wage violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* Plaintiffs allege that Defendants are joint employers who misclassified Plaintiffs as independent contractors in order to circumvent the protections of FLSA. Presently before the Court is Plaintiffs' Motion to Certify Class, filed May 9, 2017. (ECF No. 4.) The motion has been fully briefed. For the reasons stated below, the Court grants, in part, and denies, in part, Plaintiffs' motion.

## I. Factual and Procedural History

Comcast Cable Communications Management, LLC ("Comcast") is a global media and technology provider of video, high-speed Internet, and phone services. (ECF No. 1 at Pg ID 4.) To expand its services and enlarge its Michigan customer base, Comcast subcontracted its cable installation and repair services to Aero Communications, Inc. ("Aero"). (*Id.* at Pg ID 9.) To meet Comcast's business demands, Aero contracted with Piron, LLC ("Piron"), owned and operated by Steve Hannah ("Hannah"), and Reynolds Quality Installations, LLC ("Reynolds Installations"), which is owned and operated by Roderick Reynolds Jr. ("Reynolds"), who provided cable technicians for Comcast's repair and installation services. (*Id.* at Pg ID 9.)

Plaintiffs learned of the cable technician positions from Craig Monroe ("Monroe"), one of Piron's corporate officers, and submitted applications for

2

employment. (Suhail Ali Decl., at ¶ 2, ECF No. 1-5.) According to Plaintiffs', Prion employee, Tod Debeaux, interviewed Plaintiffs for the positions. (Ali Decl., at ¶ 3, ECF No. 1-5.) Plaintiffs stated Comcast required them to complete and pass a background check before they could begin work. (Shalan Almansoob Decl., at ¶ 2, ECF No. 1-6; Qasem Saleh Decl., at ¶ 1, ECF No. 1-7; Kassem Dubaishi Decl., at ¶ 1, ECF No. 1-8.) Upon completing and passing Comcast's background check, Plaintiffs received badges with Comcast's and Aero's logos and were given a Piron employee handbook. (ECF No. 1 at Pg ID 11; Ali Decl., at ¶ 11, ECF No. 1-5; Almansoob Decl., at ¶ 5, ECF No. 1-6; Saleh Decl., at ¶ 1, ECF No. 1-7; Dubaishi Decl., at ¶ 1, ECF No. 1-8.) Plaintiffs allege they wore uniforms subject to Comcast's standards. (ECF No. 1 at Pg ID 15.)

Because Aero provided the cable technician equipment, each workday, Plaintiffs were required to report to Aero's warehouse before responding to any service requests. (ECF No. 1 at Pg ID 14.) Plaintiffs returned to Aero's warehouse at the conclusion of the workday to return their equipment. (*Id.*) Comcast assigned the service jobs and work routes through a Comcast application, TechNet, which directed Plaintiffs to the work locations and informed them of the type of service needed. (*Id.* at Pg ID 13.) After completing service requests, Plaintiffs charged the customers, using Aero's billing software, FIP Mobile. (*Id.*)

3

In the field, Monroe and Reynolds monitored Plaintiffs. (*Id.* at Pg ID 15; Saleh Decl., at ¶ 9, ECF No. 1-7; Dubaishi Decl., at ¶ 9, ECF No. 1-8.) If any technical difficulties arose during the job assignment, Plaintiffs first contacted their direct supervisors, Monroe and Reynolds, and then Comcast's Tech Support Center. (*Id.* at Pg ID 15; *see also* Ali Decl., at ¶ 12, ECF No. 1-5.) Monroe and Reynolds were responsible for disciplining Plaintiffs as well. (ECF No. 1 at Pg ID 15.)

According to Plaintiffs, both Piron and Reynolds Installations paid them. (ECF No. 1 at Pg ID 9.) Plaintiffs allege the pay was inconsistent and varied in the form of cash, personal checks and money orders. (ECF No. 1 at Pg ID 15.) Plaintiffs stated they never received time records and were charged for unsatisfactory services, including charges for faulty equipment and unhappy customers. (*Id.* at Pg ID 16.) Plaintiffs allege they worked at least twelve-hour shifts, six days a week but were not paid minimum wage and did not receive overtime wages. (*Id.* at Pg ID 11.) Plaintiffs stated they regularly would overhear Piron employees complaining of their pay, specifically Mario Welch and Keith Jones. (ECF No. 28 at Pg ID 1733; ECF No. 29 at Pg ID 1736; ECF No. 30 at Pg ID 1748; ECF No. 31 at Pg ID 1748.)

Plaintiffs eventually ended their employment with Defendants and initiated this putative class action lawsuit on March 30, 2017. Plaintiffs allege Defendants

4

are joint employers who misclassified Plaintiffs as independent contractors. (ECF No. 1 at Pg ID 2.) According to Plaintiffs, Defendants owe Plaintiffs minimum wage and overtime wage benefits for willfully violating FLSA. (*Id.* at Pg ID 16-17.)

On May 9, 2017, Plaintiffs filed a motion for conditional class certification. (ECF No. 4.) Piron, Hannah, and Comcast filed responses on July 10, 2017. (ECF Nos. 25, 26, & 27.) Plaintiffs filed reply briefs on July 24, 2017. (ECF Nos. 32 & 33.) To further support its position for limiting the potential class, on August 15, 2017, Comcast filed a brief with new authority. (ECF No. 35.) In Plaintiffs' reply briefs, Plaintiffs attached amended declarations alleging Plaintiffs had personal knowledge of Piron's pay practices and policies. In response, on January 11, 2018 and with leave of Court, Comcast filed a supplemental brief. (ECF No. 66.) On January 25, 2018, also with leave of Court, Plaintiffs' filed a response to Comcast's supplemental brief. (ECF No. 68.)

On October 12, 2017, the clerk entered default against Monroe for failing to respond to the Complaint, and at Plaintiffs' request, the Court reserved on default judgment. (ECF Nos. 47 & 51.) On February 12, 2018 and February 13, 2018, in response to the Court's Show Cause Order, Plaintiffs filed proof of service for Reynolds and Reynolds Installations. (ECF Nos. 72 & 74.) Neither Reynolds nor

5

Reynolds Installations has filed a response to either the complaint or the motion to certify.

## II. Applicable Law

The FLSA requires all qualifying employers to pay employees no less than the minimum wage and to compensate employees for hours worked in excess of forty per work week at a rate not less than one-and-a-half times the regular rate of pay. 29 U.S.C. §§ 206(a)(1), 207(a)(1). The statute authorizes collective actions to recover damages for unpaid wages provided two conditions are satisfied: (1) the employees are "similarly situated" and (2) all plaintiffs provide written consent to becoming a party and such consent is filed with the court. 29 U.S.C. § 216(b). "This section provides a mechanism that is 'something akin to a class action.'" *Torres v. Gristede's Operating Corp.*, No. 04-cv-3316, 2006 WL 2819730, at *7 (S.D.N.Y. Sept. 29, 2006) (citing *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 386 (W.D.N.Y. 2005)). Nevertheless, there are differences between a FLSA collective action and a class action certified under Federal Rule of Civil Procedure 23:

> (1) the collective action binds only potential plaintiffs who "opt-in," whereas Rule 23 requires class members to opt-out, if they wish not to be included; and (2) FLSA only requires employees be "similarly situated," whereas Rule 23 requirements are more detailed. *Sipas v. Sammy's Fishbox, Inc.*, No. 05 Civ. 10319, 2006 U.S. Dist. LEXIS 24318, at *4 (S.D.N.Y. Apr. 24, 2006).

*Torres*, 2006 WL 2819730, at *7.

Courts within the Sixth Circuit and in other Circuits generally apply a two-step procedure for determining whether a FLSA case should proceed as a collective action. *See, e.g., Waggoner v. U.S. Bancorp*, 110 F. Supp. 3d 759, 764 (N.D. Ohio 2015); *Watson v. Advanced Distrib. Servs., LLC*, 298 F.R.D. 558, 561 (M.D. Tenn. 2014); *see also Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-47 (6th Cir. 2006) (describing the two-step process). At the initial stage, the Court applies a fairly lenient standard because it has minimal evidence. *Olivio v. GMAC Mortgage Co.*, 374 F. Supp. 2d 545, 548 (E.D. Mich. April 1, 2004).

At the first step, commonly referred to as conditional certification, "the plaintiff must only 'make a modest factual showing' that [the plaintiff] is similarly situated to the other employees he [or she] is seeking to notify." *Waggoner*, 110 F. Supp. 2d at 764 (quoting *Comer*, 454 F.3d at 546-47.) The plaintiff is required to show only that his or her position is similar, not identical to the other employees. *See Heibel v. U.S. Bank, N.A.*, No. 2:11-cv-00593, 2012 U.S. Dist. LEXIS, at * 11 (S.D. Ohio Sept. 27, 2012). Although, neither FLSA nor the Sixth Circuit has defined "similarly situated," the court will generally find Plaintiffs may be similarly situated where "their claims [are] unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct." *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567, 584-85 (6th Cir. 2009); *see also Olivio*, 374 F. Supp. 2d at 548 (Plaintiffs must

show "they and potential plaintiffs together were victims of a common policy or plan that violated the law.")

This "'certification is conditional and by no means final.'" *Comer*, 454 F.3d at 546 (quoting *Pritchard v. Dent Wizard Int'l*, 210 F.R.D. 591, 595 (S.D. Ohio 2002)). Finally, at this stage of the litigation, the court does not consider the merits, evaluate credibility, or resolve factual disputes. *See Heibel*, 2012 U.S. Dist. LEXIS 139510, at *8.

At the second step, the court "examine[s] more closely the question of whether particular members of the class are, in fact, similarly situated." *Comer*, 454 F.3d at 547. The court's focus is on whether the individuals who have opted into the litigation are similarly situated. *See Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279, 297, (S.D.N.Y. 2015). The court may decertify the class if it determines at the second step that the plaintiffs are not similarly situated.

### III. Analysis

Plaintiffs request a class defined as:

> All current and former employees (including those misclassified as independent contractors) of Defendant Piron or Defendant Reynolds Quality, who worked in Michigan, for Defendant Aero Communications and Defendant Comcast, who were not paid at least $7.25 per hour for every hour worked and/or did not make at least one and one half times their regular rate of pay for hours worked in excess of 40 hours in a workweek.

8

(ECF No. 4 at Pg ID at 260.) Plaintiffs refer the Court to three factors from *O'Brien* to assist in evaluating whether Plaintiffs are similarly situated to the potential class members: (1) factual and employment settings of individual Plaintiffs; (2) different defenses Plaintiffs could be subject to on an individual bases; and (3) degree of fairness and procedural impact of certifying the action. *See O'Brien*, 575 F.3d at 584.

Plaintiffs allege that all of the Plaintiffs and potential class members are cable installation and repair technicians who worked for Piron or Reynolds Quality within the last three years. According to Plaintiffs, they shared the same positions, duties, performance expectations, equipment, technology, and discipline procedures. Plaintiffs assert that any defenses to one of the Plaintiffs or potential class members is a defense to all because they had the same duties. Plaintiffs contend that because of the number of potential class members, joinder is impracticable. Finally, Plaintiffs argue that all have suffered from FLSA violations, such as failure to pay minimum wage and overtime wages.

Plaintiffs claim they worked with Piron and Reynolds Installations between March or April 2016 through June 2016, working six to seven days a week for at least twelve hours or more a day. (ECF No. 28 at Pg ID 1730; ECF No. 29 at Pg ID 1736; ECF No. 30 at Pg ID 1739-40; ECF No. 31 at Pg ID 1745.) They each allege that some weeks they were not either paid or paid less than due. (ECF No.

9

28 at Pg ID 1730; ECF NO. 29 at Pg ID 1736; ECF No. 30 at Pg ID 1742.) Applying the fairly lenient standard, Plaintiffs have presented sufficient evidence that individuals who Piron and Reynolds Installations jointly employed to perform cable technician services for Comcast through Aero were not paid minimum wage or overtime wages.

Although Piron and Hannah allege Plaintiffs' Complaint contains false claims, at this stage of the litigation, the Court accepts Plaintiffs' claims as true and declines to make credibility determinations. Comcast requests the Court to limit the class to individuals who worked for Piron *and* Reynolds Installations, which is consistent with Plaintiffs' Complaint, rather than expanding the class to individuals who worked for Piron *or* Reynolds Installations. (ECF No. 25 at Pg ID 1572.) Comcast also requests that the Court limit the class to the last three years for which Piron and Reynolds Quality jointly employed individuals assigned to perform cable technician services for Comcast customers through Aero. (*Id.* at Pg ID 1573.) To support limiting the class, Comcast argues that Plaintiffs lack personal knowledge of Piron's pay practices and policies, and although Plaintiffs establish a nexus among themselves, there is no nexus of those employed only by Piron and not Reynolds Installations.

In Plaintiffs' amended declarations, Plaintiffs allege they heard other individuals, who were employed solely by Piron, complaining about their pay.

10

Specifically, Plaintiff Ali alleges he heard Keith Jones and Mario Welch complain about Piron's pay. However, while Piron may have engaged in FLSA violations, Plaintiffs have not sufficiently alleged or provided any documentary evidence of any Piron employee, who was not also an employee of Reynolds Installations, who were the subject of FLSA violations. Although at this stage of the litigation, Plaintiffs only are required to make a modest factual showing, they have not sufficiently shown that the other employees they heard complaining were employees of Piron. Further, Plaintiffs have not made a factual showing that the individuals' complaints were based on the FLSA violations at issue in this case. Plaintiffs summarily state that they heard other employees complain about Piron not paying them for the hours they worked and for overtime. *See Demorris v. Rite Way Fence, Inc.*, No. 14-cv-13777, 2015 WL 12990483, at *3 (E.D. Mich. Mar. 30, 2015) ("Personal knowledge alone, however, is not sufficient"). Such assertions are insufficient to support expanding the class beyond what Plaintiffs requested in their Complaint. (ECF No. 1 at Pg ID 16.) At a minimum, Plaintiffs could have provided affidavits from Mario Welch and Keith Jones to support its claims that they were solely employees of Piron and were subject to FLSA violations. Therefore, nothing in the record supports expanding the class to individuals employed by "Piron *or* Reynolds Installations."

## IV. Conclusion

Accordingly, for the reasons stated above, the motion is granted, in part, and denied, in part.

**IT IS ORDERED** that Plaintiffs' motion (ECF No. 4) is **GRANTED, in part, and DENIED, in part**; and

**IT IS FURTHER ORDERED** that the motion is granted to the extent that the Court conditionally certifies this action as a collective action on behalf of:

> All current and former employees (including those misclassified as independent contractors) of Defendant Piron and Defendant Reynolds Quality, who worked in Michigan, for Defendant Aero Communications and Defendant Comcast, who were not paid at least $7.25 per hour for every hour worked and/or did not make at least one and one half times their regular rate of pay for hours worked in excess of 40 hours in a workweek.

**IT IS FURTHER ORDERED** that the Court approves, with the above modification, Plaintiffs' proposed notice and consent forms to be sent *via* U.S. Mail and e-mail; and

**IT IS FURTHER ORDERED** that the Court appoints The Law Offices of Bryan Yaldou, PLLC as interim Class Counsel; and

**IT IS FURTHER ORDERED** that Defendants are to serve the Claims Administrator with a computer-readable and exportable Excel file containing the full name, last known address, last known telephone number, employee ID number

and last known e-mail of all putative class members identified above within thirty (30) days from the date of the entry of this Order; and

**IT IS FURTHER ORDERED** that the Court authorizes the Claims Administrator to promptly disseminate the approved notice and consent form, with the above modification, to all Collective Group Members pursuant to the "opt-in" mechanism for collection class actions authorized by the Fair Labor Standards Act, 29 U.S.C. § 216(b); and

**IT IS FURTHER ORDERED** that the Court requires the Claims Administrator to file all opt-in consent forms they receive within sixty (60) days of sending the court-approved notice; and

**IT IS FURTHER ORDERED** that this Court is requiring Defendants to refrain from communication with the Collective Group Members concerning this lawsuit or the underlying issues.

**IT IS SO ORDERED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: March 16, 2018

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, March 16, 2018, by electronic and/or U.S. First Class mail.

s/ R. Loury
Case Manager