IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUHAIL ALI, SHALAN ALMANSOOB,
QASEM SALEH, and KASSEM
DUBAISHI, on behalf of themselves and all
other persons similarly situated, known and
unknown,

          Plaintiffs,

v.

PIRON, LLC, STEVE HANNAH, CRAIG
MONROE, REYNOLDS QUALITY
INSTALLATIONS, LLC RODERICK
REYNOLDS JR., AERO
COMMUNICATIONS, INC, and
COMCAST CABLE COMMUNICATIONS
MANAGEMENT, LLC,  a Michigan for-
profit company, and owners of said
Michigan for-profit company,

          Defendants.

Case No. 4:17-cv-11012

Hon. Linda V. Parker

Magistrate Judge David R. Grand

_____/

**JOINT MOTION FOR APPROVAL OF FLSA SETTLEMENT
AND BRIEF IN SUPPORT**

Plaintiffs, Defendant Aero Communications, Inc., and Defendant Comcast Cable Communications Management, LLC ("the parties"), through their undersigned counsel, move this Court for approval of the settlement reached between them at the settlement conference conducted by Magistrate Judge David R. Grand on October 24, 2018, as set forth in the settlement agreement attached as Exhibit A.

**BRIEF IN SUPPORT OF THE PARTIES' JOINT MOTION**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................ ii

ISSUES PRESENTED ............................................................................. iii

MOST AUTHORITATIVE CASES ........................................................ iv

I. INTRODUCTION ........................................................................1

II. FACTUAL BACKGROUND ........................................................1

    A. Background on Claims and Defenses ...................................1

    B. Procedural History ...............................................................5

III. ANALYSIS ...................................................................................7

    A. Potential Damages ................................................................7

    B. Settlement Will Avoid Tremendous Burdens of Establishing Joint Employment, Liability, and Defenses. ..........................9

    C. Litigation Risks ..................................................................10

    D. Settlement Reached Through Arm's Length Negotiations...................11

    E. Attorneys' Fees. .................................................................12

    F. Indemnification Provisions. ...............................................13

    G. Settlement Releases the Defaulted Parties. .........................14

IV. CONCLUSION ..........................................................................15

## ISSUES PRESENTED

Is the settlement reached by the parties fair and reasonable under the Fair Labor

Standards Act, 29 U.S.C. § 201 et seq.?


Plaintiffs' Answer: Yes

Defendants' Answer: Yes


Should this Court approve the parties' joint motion for approval of FLSA

settlement agreement?


Plaintiffs' Answer: Yes

Defendants' Answer: Yes

# MOST AUTHORITATIVE CASES

## Cases

*Fegley v. Higgins,*
  19 F.3d 1126 (6th Cir. 1994) .................................................................12

*Williams v. Alimar Security, Inc.,*
  4:13-cv-12732 ECF No. 61 Pg ID 1428 (Oct. 31, 2016) ......................7

*Wolinsky v. Scholastic, Inc.,*
  900 F. Supp. 2d 332 (S.D.N.Y. 2012)...................................................7

## I.    INTRODUCTION

This is an action brought by four individual Plaintiffs under the Fair Labor Standards Act, 29 U.S.C. § 2001, *et seq.* for recovery of alleged unpaid overtime compensation. The Court conditionally certified the case as a collective action on March 16, 2018. (See Dkt. No. 76). Notice was sent to nine individuals, but only the original four named Plaintiffs filed consents. (See Dkt Nos. 37–40).

The parties thereafter engaged in limited discovery, including production of time records, in order to determine whether early resolution of the matter could be achieved. The parties participated in a settlement conference with Magistrate Judge Grand on October 24, 2018. After nearly five hours of negotiation, settlement was reached and a specific term sheet was presented to Magistrate Judge Grand and signed by the parties.

The parties have since finalized a formal Settlement Agreement and Release and now move the Court for approval of the settlement.

## II.    FACTUAL BACKGROUND

### A.    Background on Claims and Defenses

Plaintiffs brought this collective action pursuant to 29 U.S.C. § 216(b) of the Fair Labor Standards Act on behalf of themselves and all other persons similarly situated. Defendants are (1) Piron, LLC, (2) Steve Hannah, (3) Craig Monroe, (4) Reynolds Quality Installations, LLC, (5) Roderick Reynolds Jr., (6) Aero

1

Communications, Inc., and (7) Comcast Cable Communications Management, LLC. (Dkt. No. 1).

Defendant Comcast's cable division provides video, high speed internet, telephone, and home security services to residential and business customers. The cable division contracts with vendor companies from time-to-time to provide cable technician services to Comcast customers as business demands necessitate. (See Comcast's Answer ¶ 14 at Dkt. No. 12).

At the time of the events giving rise to Plaintiffs' lawsuit, Comcast had a contract with Defendant Aero to provide cable technician services to Comcast customers in Michigan. (*Id.* at ¶14). Aero in turn contracted with Defendant Piron, owned and operated by Defendant Steve Hannah, and Piron in turn contracted with Reynolds Quality Installations, LLC, which was owned and operated by Defendant Reynolds. (Dkt. No. 76 at 21).

According to Comcast, Aero was responsible for selecting which of its employees performed work for Comcast; Comcast did not know what technicians Aero employed, if Aero hired additional technicians to perform work for Comcast, or who may have applied to Aero. The only requirements that Comcast imposed on Aero for assigning its employees related to the safety of Comcast customer: performing a background check and drug test.

Aero contends that it was permitted to subcontract its obligations under the contract, and did so with Defendant Piron.  Under the contract between Aero and Piron, Piron was responsible for selecting which of its employees performed work for Aero.  The only requirements Aero imposed on Piron were Comcast's requirements related to customer safety, and the requirement that Piron inform Aero if it intended to subcontract its obligations under the contract.  According to Aero, Piron never informed Aero that it subcontracted its obligations under its contract with Aero to Reynolds Quality.  Both Comcast and Aero contend they were not aware that Piron further subcontracted its Aero obligations to Reynolds Quality.

In its contract with Comcast, Aero warranted that its subcontractors were compliant with all provisions of the Fair Labor Standards Act, and Aero agreed to indemnify and hold Comcast harmless from all lawsuits, and breaches of the agreement by Aero or Aero's subcontractors, including compliance with the FLSA. (Exhibit B at Section 17).

Plaintiffs contend that they learned of the cable technician positions from Defendant Craig Monroe, alleged to be one of Piron's corporate officers, and submitted applications for employment.  (Dkt. No. 76 at pp. 2–3). For the first three to five weeks of their employment, Plaintiffs claim they participated in a mandatory on the job training program. The training was facilitated by Reynolds

Quality and conducted by trainers/technicians who worked for Piron and/or were friends of Roderick Reynolds. After Plaintiffs completed training, they were issued a technician badge that permitted them to perform work on their own. The badge displayed both Comcast and Aero logos. (*Id.* at p. 3).

Plaintiffs began their workday by driving to Aero's warehouse to pick up their equipment. From the warehouse, they traveled to their various work assignments, which were assigned through Comcast's web-based application called TechNet. At the end of the day, Plaintiffs returned to Aero's warehouse to drop off their equipment. (*Id.*).

Once they were on the job, Plaintiffs were supervised remotely by Roderick Reynolds, Craig Monroe, Steve Hannah and other Reynolds or Piron employees. They were not directly supervised by Aero or Comcast. (*Id.* at 4).

During Plaintiffs' employment, Piron and Reynolds Quality made varying representations to Plaintiffs regarding the amount they would be paid. According to Plaintiffs, they were not paid as promised, and sometimes were not paid at all. When Plaintiffs were paid, payment was made by either Piron or Reynolds Quality. Plaintiffs were not paid directly by Comcast or Aero and the terms of their compensation arrangement was with Piron and/or Reynolds Quality. (*Id.*).

According to Plaintiffs, they complained about the alleged improper payment to their supervisors at Piron and Reynolds Quality. Their complaints,

however, were not resolved. As a result, Plaintiffs voluntarily quit their employment in June 2016, after just a few months of work. (*Id.*).

### B.      Procedural History

Plaintiffs filed their Collective Action Complaint on March 30, 2017. (Dkt. No. 1). Comcast timely answered on May 23, 2017. (Dkt. No. 12). Instead of initially filing an answer, Aero moved to dismiss Plaintiff's Complaint pursuant to FRCP 12(b)(6) (Dkt. No. 13). The Court denied Defendant Aero's Motion to Dismiss (Dkt. No. 78), concluding that Plaintiffs had pled sufficient factual allegations on the issue of joint employment. Aero thereafter timely filed an answer to the Complaint.

Defendants Piron, LLC and Steve Hannah filed answers to the Complaint and responses to Plaintiffs' motion to certify class. (Dkt Nos. 16, 17, 26, 27). On October 24, 2017, Piron and Hannah's attorney moved to withdraw as counsel, which was granted by the Court. (Dkt 59). On February 6, 2018, The Court issued a Show Cause Order to Piron, requiring it to obtain counsel within thirty days. (Dkt. 71). Piron did not respond to the order, and the Court entered an Order of Default as to Piron on March 14, 2018. (Dkt. 80).

Defendants Roderick Reynolds and Reynolds Quality failed to respond to Plaintiffs' Complaint. Plaintiffs filed requests for a Clerk's Entry of Default

against Reynolds and Reynolds Quality on March 7, 2018, and the clerk entered defaults against them on the same day. (Dkt. Nos. 75, 76, 77).

Defendant Craig Monroe failed to respond to Plaintiffs' Complaint. On October 11, 2017, Plaintiffs filed a Request for a Clerk's Entry of Default as to Defendant Monroe, which was entered by the clerk on October 12, 2017. (Dkt Nos. 46, 47).

Although default was entered as to Piron, Reynolds, Reynolds Quality, and Monroe, Plaintiffs requested that the Court postpone entry of a default judgment. (Dkt/ Nos. 51, 85).

The Court eventually conditionally certified the following class:

> All current and former employees (including those misclassified as independent contractors) of Defendant Piron and Defendant Reynolds Quality, who worked in Michigan, for Defendant Aero Communications and Defendant Comcast, who were not paid at least $7.25 per hour for every hour worked and/or did not make at least one and one half times their regular rate of pay for hours worked in excess of 40 hours in a workweek. (Dkt. No. 81.)

On May 11, 2018, the Claims Administrator provided notice to all nine putative class members. The only opt-ins were the four named Plaintiffs. The other five Reynolds Quality technicians who worked through Piron to provide services for Aero and Comcast did not opt in.

### III.   ANALYSIS

Resolutions of claims under the FLSA require supervision of either the Secretary of Labor or a District Court. *Snook v. Valley OB-GYN Clinic, PC*, 14-cv-12302, 2015 WL 144400, at *1 (E.D. Mich. Jan. 12, 2015) (Exhibit C). In determining whether a settlement is fair and reasonable, this Court has relied on factors set forth in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). *See Williams v. Alimar Security, Inc.*, 4:13-cv-12732 ECF No. 61 Pg ID 1428 (Oct. 31, 2016) (Exhibit D). These factors are:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky*, 900 F. Supp. 2d at 335 (S.D.N.Y. 2012).

These factors are present here, and weigh in favor of Court approval of the parties' proposed settlement.

### A. Potential Damages

Plaintiffs' lawsuit seeks unpaid overtime wages, liquidated damages, and attorneys' fees. Plaintiffs claim that the total amount owing to them is $68,640 calculated as follows:

> Suhail Ali:
>     Owed:  $7,920.00

7

Total with liquidated damages: ($7,920.00 x 2) = $15,840.00

Shalan Almansoob:
    Owed:  $7,040.00
    Total with liquidated damages: ($7,040.00 x 2) = $14,080.00

Kassam Dubaishi:
    Owed:  $8,800.00
    Total with liquidated damages: ($8,800.00 x 2) = $17,600.00

Quasem Saleh:
    Owed:  $10,560.00
    Total with liquidated damages: ($10,560.00 x 2) = $21,120.00

Total Plaintiffs' Damages:  $68,640.00

The Parties strongly disagree about the damages that Plaintiffs may be entitled to in the present case. Defendants Comcast and Aero argue that Plaintiffs' did not work as many hours as they claim to have worked; portions of their workday were not compensable; and that they were actually paid, by Piron or Reynold or some combination of both, more money than they claim they were paid. Defendants Comcast and Aero point to Plaintiffs' declarations and documents provided to them by Piron as the basis for their analysis. Defendants Comcast and Aero vehemently deny that they were joint employers under the FLSA. Additionally, Comcast and Aero do not believe that Plaintiffs are entitled to liquidated damages under 29 U.S.C. § 216(b).

In contrast, Plaintiffs contend that all of their work from the time they reported to the Aero warehouse until they dropped off their equipment at the Aero

warehouse was compensable time; that they were entitled to at least the minimum wage for all hours worked up to 40 hours in a workweek and at least one and one-half their regular rate of pay for hours worked over 40 hours in a workweek, including all training time; that they worked between 10 and 12 hours a day, six days a week; and that they were not compensated for all of the hours that they worked for Defendants. Plaintiffs argue that under the joint employment standard set out in *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983) and/or *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125 (4th Cir. 2017) Defendants Comcast and Aero are Plaintiffs' joint employers. Accordingly, Plaintiffs argue that they are entitled to liquidated damages under 29 U.S.C. § 216(b) from Defendants Comcast and Aero as they are jointly and severally liable to Plaintiffs.

The range of recovery, therefore, is between *de minimis* and $68,640.00 (exclusive of attorneys' fees). The proposed settlement amount of $26,344.94 for Plaintiffs' back wages and liquidated damages is within this range, and is an amount that the parties have agreed is reasonable.

### B. Settlement Will Avoid Tremendous Burdens of Establishing Joint Employment, Liability, and Defenses.

If the parties were to move forward with litigation, it would be burdensome for all parties. Several Defendants have defaulted and gone out of business. Obtaining depositions and records from these entities would be extraordinarily

difficult. The expenditure of resources that it would take to depose numerous witnesses, including the four Plaintiffs, engage in formal written discovery, and brief issues concerning joint employment will far surpass the cost of the settlement. The proposed settlement allows the parties to avoid incurring the burden and expense of discovery, motions, trial, and possible appeals.

### C. Litigation Risks

Litigating this case further poses a substantial amount of risk for all parties. If this Court or a jury were to find that Defendants Comcast and Aero were not joint employers, Plaintiffs would be left chasing the defaulted parties, which would practically leave them with no remedy for their claims. However, if this Court or a jury found that Defendants Comcast and Aero were joint employers, Comcast and Aero could have a significant amount of exposure. Defendants Comcast and Aero could be held liable for damages, liquidated damages, attorneys' fees and costs.

The issue of joint employment is one of the most hotly contested issues in the employment law arena. Throughout the country, courts are independently developing standards for determining whether employers are joint employers. The consequence of this is that courts are coming to different, often contrary, conclusions about who is a joint employer. *Compare Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125 (4th Cir. 2017) (rejecting the common law agency test and articulating a new standard that focuses on the relationship between the

10

putative joint employers and finds that an employer is liable if it is "not completely disassociated" with the other putative joint employers) and *Browning-Ferris Indus. of Cal. v. N.L.R.B.*, 16-1028, 2018 WL 6816542 (D.C. Cir. Dec. 28, 2018) (finding that indirect control of an business entity over employees could be sufficient to find that the entity was a joint employer) (Exhibit E) *with Jacobson v. Comcast Corp.*, 740 F. Supp. 2d 683 (D. Md. 2015) (summary judgment granted to Comcast under similar circumstances despite the fact Comcast issued ID badges, determined the service calls assigned to the installation companies, directed technicians to specific worksites, and detailed the timeframe in which jobs were to be completed); *Zampos v. W&E Communications, Inc.*, 970 F. Supp. 2d 794 (N.D. Ill. 2013) (Comcast's motion for summary judgment granted under similar circumstances because it was not a joint employer).

The parties, represented by experienced counsel, assessed these risks in reaching settlement.

### D. Settlement Reached Through Arm's Length Negotiations.

Settlement was reached under the auspices of the magistrate judge at a settlement conference held on October 24, 2018. The negotiations were hotly contested and the parties eventually reached a reasonable settlement after hours of negotiation. The terms of the agreement were set forth in a term sheet in the magistrate's courtroom. There was no collusion.

11

### E. Attorneys' Fees.

Under the FLSA, attorneys' fees are mandatory to prevailing plaintiffs. 29 U.S.C. § 216(b) ("The court in such [FLSA] action *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action") (emphasis added).; *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir. 1994). The purpose of the § 216(b) mandatory fees provision is to insure effective access to the judicial process. *United Slate, Local 307 v. G & M Roofing & Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984). Congress intended that the wronged employee should receive his or her full wages "without incurring any expense for legal fees or costs." *Id.* The Sixth Circuit has adhered to the view that attorneys' fees in a FLSA action serves a larger goal because it "encourage[s] the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134-35 (internal citation omitted).

In FLSA cases, attorney's fees often exceed the amount of recovery on behalf of plaintiff-employees. *Id.* Unlike Rule 23 class actions – which typically limit fees to a fixed percentage of the common fund method – in the FLSA context there is no requirement that the fee award be proportionate to plaintiffs' monetary recovery. *West v. Hess Environmental Servs.*, 111 F.3d 132 (table), 1997 WL 189507 (6th Cir. Apr. 17, 1997) (citing *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986)) ("there is no requirement under the fee shifting statutes that an award

12

of attorneys' fees be proportional to the amount of the underlying award of damages.") (Exhibit F); *Fisher v. Stolaruk Corp.*, 648 F. Supp. 486, 487 (E.D. Mich. 1986) (citing *Michigan Window Cleaning Co. v. Martino*, 173 F.2d 466 (6th Cir. 1949)) ("An award of attorney fees [under the FLSA] may exceed the amount in controversy.").

The most common method for calculating attorneys' fees in FLSA cases is the lodestar method. *Dean v. F.P. Allega Concrete Constr. Corp*, 622 F. App'x 557, 559 (6th Cir. 2015) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)) ("In determining the amount of any award under the FLSA, courts start with the lodestar amount: the number of hours worked times a reasonable hourly rate."). In the present case, Plaintiffs' attorneys have spent just over 270.00 hours prosecuting Plaintiffs' claims as of January 4, 2019. This brings Plaintiffs' lodestar to approximately $100,000.00. Additionally, Plaintiffs' have $631.31 in costs into this case. Despite Plaintiffs' significantly higher lodestar, Plaintiffs' have agreed to settle their attorneys' fees for $38,705.06. Plaintiffs' willingness to accept fees so much lower than their lodestar reflects the uncertainty of future litigation and the absence of collusion in the settlement agreement.

### F. Indemnification Provisions.

Under Comcast's contract with Aero, Aero has ultimate responsibility for any judgment or settlement. Aero, however, has ceased operations, is dissolving

and has few remaining assets to attribute to the settlement. As a result of a sale of the company to NX Utilities, LLC, NX agreed to assume Aero's obligations to indemnify Comcast (Exhibit G) and, as a result, is identified in the settlement agreement as the party making part of the payments. (Exhibit A.) Because Aero has ceased business operations, including NX as a party to the agreement that is responsible for payment assures Plaintiffs will receive the payments required under the agreement.  To ensure compliance with the terms of the Settlement Agreement, Aero has provided the funds they are responsible for paying under the Settlement Agreement to its Counsel. These funds have been placed in Aero's counsel's IOLTA account for distribution on behalf of Aero as provided in paragraph 2 of this Agreement.

### G. Settlement Releases the Defaulted Parties.

Although several of these Defendants were defaulted, the proposed Settlement Agreement and Release would release all Defendants. This is a necessary provision for Defendants Comcast and Aero so that they do not get dragged back into a lawsuit as factual witnesses involving the other Defendants on the same claims brought in this case. Plaintiffs agree that they are being fairly compensated and that resolution of the lawsuit on this basis is acceptable. Further, neither Reynolds Quality nor Piron are still in business and the chances of recovery against these Defendants is remote.

## IV.   CONCLUSION

The proposed settlement and the manner of payment achieves the goals of the Fair Labor Standards Act, saves the parties considerable burden and expense, and ensures payment for Plaintiffs' disputed claims for unpaid overtime. The settlement was reached with the assistance of Magistrate Judge Grand acting as a mediator in chambers, and all parties believe it is fair and reasonable.

The parties request that the Court approve the proposed settlement.

Respectfully Submitted,

THE LAW OFFICES OF                           KIENBAUM HARDY VIVIANO
BRYAN YALDOU, PLLC                        PELTON & FORREST, P.L.C.


By: s/*Bryan Yaldou (w/consent)*            By:  s/*Eric J. Pelton*
    Bryan Yaldou (P70600)                        Eric J. Pelton (P40635)
    Omar Badr (P70966)                           Julia Turner Baumhart (P49173)
Attorneys for Plaintiffs                      Attorneys for Defendant Comcast Cable
23000 Telegraph, Suite 5                      Communications Management, LLC
Brownstown, MI 48134                          280 N. Old Woodward Ave., Ste. 400
(734) 692-9200                                Birmingham, MI  48009
bryan@yaldoulaw.com                           (248) 645-0000
                                              epelton@khvpf.com
                                              jbaumhart@khvpf.com

15

CLARK HILL PLC


By: _s/Ellen E. Hoeppner (w/consent)_
Daniel J. Bretz (P34334)
Ellen E. Hoeppner (P73831)
Attorneys for Defendant Aero
500 Woodward Ave., Ste. 3500
Detroit, MI  48226
(313) 965-8300
dbretz@clarkhill.com
ehoeppner@clarkhill.com

January 22, 2019

313960_2

## CERTIFICATE OF SERVICE

I hereby certify that on January 22, 2019, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record who have appeared to date.

_/s/Eric J. Pelton_
Eric J. Pelton (P40635)
Kienbaum Hardy Viviano
Pelton & Forrest, P.L.C.
280 N. Old Woodward Ave. Ste. 400
Birmingham, MI  48009
(248) 645-0000
epelton@khvpf.com